COMMONWEALTH vs. HENRY J. WRIGHT.

Suffolk.  December 15, 1980. — January 30, 1981.

Present: PERRETTA, DREBEN, & NOLAN, JJ.

*Practice, Criminal*, Continuance, Arraignment, Fair trial, Directed ver-
    dict, Argument by prosecutor, Assistance of counsel, Execution of
    sentence.

A defendant who had known of his impending trial for a year and had
    been represented by counsel during that time was not entitled as of
    right to insist on a change of counsel on the day his trial was to com-
    mence, and the judge did not abuse his discretion in refusing to grant a
    continuance for that purpose.  [278-279]
A criminal defendant failed to show any prejudice arising from the fact he
    was not arraigned on one of the three indictments returned against
    him until the day on which the trial on all three indictments com-
    menced where he had previously filed pretrial motions in connection
    with the indictment and had participated in a thorough probable
    cause hearing on the complaint charging the same offense.  [279-280]
There was no merit to a contention by a criminal defendant that he was
    denied a fair trial on charges arising from incidents in the Boston
    "Combat Zone" because of the pretrial publicity concerning an unre-
    lated crime in the same area.  [280]
There was no merit to a contention that a judge erred in denying a de-
    fendant's motion for directed verdicts based on a claim that the testi-
    mony of the Commonwealth witnesses was "inherently improbable."
    [280]
There was nothing improper in a comment by the prosecutor in his closing
    argument at a criminal trial that, because of the nature of the case, he
    had been required to produce the testimony of "whores."  [281]
There was no merit to a contention by a defendant that he was denied
    effective assistance of counsel at a criminal trial.  [281]
A defendant was not entitled to a new trial on the ground of newly dis-
    covered evidence where the evidence, if he had exercised diligence,
    would have been available at trial.  [281-282]
The denial of a defendant's motion for admittance to bail was correctly
    founded on the absence of a reasonable likelihood of his success on ap-
    peal.  [282]

INDICTMENTS found and returned in the Superior Court on January 7, 1976.

The cases were tried before *McLaughlin,* C.J., and motions for a new trial were heard by *Irwin,* J.

A petition for admittance to bail was heard in the Appeals Court by *Hale,* C.J., and *Brown,* J.

*Henry J. Wright,* pro *se.*

*Kevin Connelly,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. To indictments charging assault and battery by means of a dangerous weapon (golf club) (G. L. c. 265, § 15A), and deriving support from the earnings of a prostitute (G. L. c. 272, § 7), the defendant pleaded not guilty; he was tried and found guilty by a jury. The jury's inability to agree resulted in a mistrial of an indictment for statutory rape (G. L. c. 265, § 23) of the same female child (victim) who was the object of the other two offenses. There followed five motions for a new trial which were denied after hearing. Finally, a petition for stay of sentence and admittance to bail was heard and denied by two Justices of this court acting as single justices at different times. The defendant has appealed from all these setbacks. There has been no error in any of these proceedings.

A jury could have found that when the victim was fifteen years old in May, 1975, she left her mother's house in Dorchester and found her way into downtown Boston. She met the defendant in a restaurant in the Combat Zone near the end of June, 1975. He promised that she would have a "good job," "be dressed real nice," dressed the same way as the three women who then accompanied him, "have plenty of money," "go different places" and do what she wanted. She succumbed to these blandishments and accompanied the defendant first to Hartford, Connecticut, then to New York city, and finally to Providence, Rhode Island, where the defendant arranged for the victim to have her own apartment. One day in July, after these many peregrinations and while living in Providence, the victim asked the defendant what type of job she would have. He told her

first that she would be "entertaining" men and then when pressed for more specificity, he told her that she would be a prostitute, adding a remark about the benefits to her of prostitution.

She came to Boston on July 17, 1975, and one of the women associated with the defendant rented a room in the Back Bay for her to use as her "trick room," the place of assignation to which she would bring her customers ("tricks"). She then went to the Combat Zone and, as a result of her first customer contact, she was arrested, spent the night in jail and was released the next morning. She used the name, Lorraine Banks, which had been assigned to her by the defendant. Discouraged by this immediate failure, she went to Providence with one of the defendant's other female associates. A few weeks later, the defendant drove the victim to the Combat Zone and she resumed her solicitations of "a lot of men" in Boston. She learned that she was to turn over all her earnings to the defendant and she did so. In return, the defendant bought her clothes and food and paid the rent in the hotels in which she lived as well as the rent for the "trick room" in the Back Bay. This arrangement continued for approximately two and one-half months until October 6, 1975, when the victim met her sister in the Combat Zone and as a result of this meeting, the victim went home to her mother who reported her daughter's complaints to the police.

She had been arrested three times in this period, twice for prostitution and once for being a common nightwalker. The defendant had engaged in sexual intercourse with the victim many times. She was severely beaten by the defendant in a Boston hotel in early September, 1975, after he threatened to do harm to her family. He beat her again on October 2 or October 3, 1975. On the latter occasion he hit her with a golf club. She was treated at a hospital for these injuries.

The defendant has argued several issues which will be treated separately.

1. *Refusal to grant continuance.* On the morning of trial, December 21, 1976, the defendant sought a continu-

ance to permit counsel, whom he had retained the previous afternoon, to become familiar with the case. This lawyer was then on trial elsewhere, but he sent his associate to seek the postponement. The defendant complained of a breakdown in communication with the lawyer who had been representing him from the outset and who was then in court and prepared to try his case. The trial judge permitted the new lawyer to participate as "associate counsel," but refused to postpone the trial. There was no error.

The lawyer whom the defendant sought to displace at this late hour, and his associate, had been representing the defendant since the probable cause hearing in the Boston Municipal Court which took place over one year before the trial date. The allowance of a motion to continue is addressed to the discretion of the trial judge. See *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-57 (1976); *Commonwealth* v. *Flowers*, 5 Mass. App. Ct. 557, 566 (1977), cert. denied, 434 U.S. 1077 (1978). A defendant who has known of his impending trial for a year, even if he becomes unhappy with his lawyer at a late date, is not entitled as of right to insist on a change of counsel on the day of his trial and thereby interfere with the orderly conduct of the judicial system. See *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276-277 (1973); *Commonwealth* v. *Jackson*, 376 Mass. 790, 796 (1978).

2. *Tardy arraignment.* Process for the three offenses for which the defendant was tried issued from the Boston Municipal Court on November 7, 1975. A probable cause hearing on the complaints had been conducted on December 17, 1975. The grand jury returned indictments for these same offenses on January 7, 1976. For some inexplicable reason, the defendant was arraigned, on March 25, 1976, on only two of the indictments. He was not arraigned on the indictment charging assault and battery by means of a dangerous weapon until December 21, 1976, the day on which his trial commenced. He now argues prejudice because he was unaware of this charge (he says) and hence unable to defend. There is no merit to this argument. As ear-

ly as April 12, 1976, he filed ten pretrial motions in connection with this indictment, most of which had discovery as their target. On the complaint charging the very same offense, he had participated with counsel in a thorough probable cause hearing in the Boston Municipal Court.

3. *Jury venire.* In one of his motions for a new trial, the defendant argues for the first time a denial of a fair trial because of the pretrial publicity concerning the slaying of a football player in the Combat Zone. The issue is belatedly raised and therefore is not properly before this court. See *Commonwealth* v. *Underwood*, 358 Mass. 506, 509 (1970). Further, there is no merit to it in the absence, as here, of a showing of prejudice. See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 297 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972); *Commonwealth* v. *Hanscomb*, 367 Mass. 726, 728-729 (1975). Equally without merit and suffering the same vice of tardiness is the defendant's claim of prejudice because the prosecutor exercised his peremptory challenges so as to exclude jurors because of race (see *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 [1979]). Similarly, his broadside attack on the exemption provisions of G. L. c. 234, §§ 1 & 1A, must fall. *Commonwealth* v. *Morgan*, 369 Mass. 332, 333-337 (1975), cert. denied, 427 U.S. 905 (1976).

4. *Motion for directed verdicts.* The defendant seems to argue that the cases should not have gone to the jury because the testimony of the witnesses for the Commonwealth was inherently improbable. He clearly misunderstands (or at least misstates) the appropriate standard in ruling on a motion for directed verdict, now properly denominated a motion for required finding of not guilty. Mass.R.Crim.P. 25, 378 Mass. 896 (1979). Such a motion should not be allowed unless the judge rules that after viewing the evidence in the light most favorable to the Commonwealth, no rational trier of fact could have found the elements of the crimes beyond a reasonable doubt. *Commonwealth* v.

*Latimore,* 378 Mass. 671, 677-678 (1979). In this case, there was cogent evidence on every element of the crimes charged in the indictments.

5. *Prosecutor's final argument.* The only complaint advanced by the defendant under this caption is the rhetoric of the prosecutor (reproduced, in part, in the margin)[1] in telling the jury that the Commonwealth was required to produce testimony of whores. There was no improper appeal to passion or prejudice. It was aggressive, but founded on the evidence. See *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring); *Commonwealth* v. *Johnson,* 374 Mass. 453, 460 (1978).

6. *Motions for new trial.* In the first motion for a new trial, the trial judge made findings and rulings in response to all the grievances advanced by the defendant. The only argument proposed with which we have not dealt earlier in this opinion is an oblique attack on the competency of the defendant's trial counsel. As usual, with the acuity of vision which accompanies an analysis of a trial already consummated, the defendant perceives errors and weaknesses in the representation given to him. This argument is without merit. Trial counsel's performance exceeded by far the minimum constitutional standard of "behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

The defendant then filed a series of motions for a new trial, four in all, followed by a petition for rehearing, all of which were heard by another judge (motion judge) because the trial judge had retired from judicial service. The only new issue raised in these motions was a claim of newly discovered evidence supported, in the main, by an affidavit of his mother and the testimony of witnesses which purported to establish an alibi. The motion judge made exhaustive

---

[1] "We don't go and pick our witnesses. We must take what we get. Unfortunately, in this type of case, our witnesses are whores, but that's what we have in our society, and we must use them."

and careful findings and rulings to the effect that, if the defendant had exercised diligence, this evidence would have been available to him at trial. See *Commonwealth* v. *Gordon*, 4 Mass. App. Ct. 797, 798 (1976). The motion judge also found the credibility of the witnesses and the materiality of their evidence to be less than compelling. See *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 495-497 (1920).

7. *Motion for admittance to bail.* The defendant has bundled all matters which he has argued in connection with his trial and motions for new trial in a final effort to gain admittance to bail. The denial of his motion was correctly founded on the absence of a reasonable likelihood of success on appeal. *Commonwealth* v. *Allen*, 378 Mass. 489, 498 (1979). The defendant's pimping operations were interstate and the single justices might have found "the possibility of flight to avoid punishment." *Commonwealth* v. *Levin*, 7 Mass. App. Ct. 501, 505 (1979).

*Orders denying a new trial*
*and bail affirmed.*
*Judgments affirmed.*