Querubin *v.* Commonwealth.

HECTOR QUERUBIN *vs.* COMMONWEALTH.

Suffolk. May 6, 2003. - September 9, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Bail. Due Process of Law,* Pretrial detainees, Substantive rights, Right to hearing. *Practice, Criminal,* Detainer.

In a criminal case, a Superior Court judge's denial of bail pursuant to G. L. c. 276, § 57, to a defendant who posed a serious flight risk but who was not dangerous did not violate the defendant's substantive due process rights under the Federal and State Constitutions, where the defendant had no constitutional right to be released on bail prior to trial, and where the provisions of § 57, which merely codified the inherent authority of a Superior Court judge, under common law, to deny bail to defendants, were narrowly tailored to the State's legitimate and compelling interest in assuring the defendant's presence at trial. [110-116]

In a criminal case, a Superior Court judge's denial of bail pursuant to G. L. c. 266, § 57, to a defendant who posed a serious flight risk but who was not dangerous did not violate the defendant's procedural due process rights under the Federal and State Constitutions, where the defendant was properly given a hearing prior to the judge ruling on his motion for admittance to bail (an opportunity of which the detainee took advantage by attacking the strength of the Commonwealth's case and asserting his own good character and ties to the community), after which the judge could properly have determined that there were no conditions that could be imposed that would secure the defendant's appearance at future court proceedings [116-119]; further, due process warranted no higher standard of proof than preponderance of the evidence for determining whether the defendant posed a serious flight risk and whether any conditions would reasonably assure his appearance, and the standard for admitting a person to bail under G. L. c. 276, § 57 was not unconstitutionally vague [119-120].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 11, 2002.

The case was reported by *Spina,* J.

*Andrew D'Angelo (Kathleen M. O'Connell & Reinaldo Gonzalez* with him) for Hector Querubin.

*Brian J.S. Cullen,* Assistant District Attorney, for the Commonwealth.

SPINA, J. In this case, we consider the conditions for holding a defendant, who poses a serious flight risk, without bail, prior to trial, pursuant to G. L. c. 276, § 57. A judge in the Superior Court denied a motion of Hector Querubin (defendant) to be admitted to bail under this statutory provision. The defendant filed a petition for relief in the county court pursuant to G. L. c. 211, § 3, challenging the judge's decision. A single justice of this court reserved and reported the case, without decision, to the full court. We now affirm.

1. *Background.* The facts, as set forth by the parties in a joint statement of facts, are as follows. On August 9, 2000, State Trooper Mark Marron and members of a joint task force went to an apartment in Revere to arrest the defendant and one William Serna on default warrants. When Trooper Marron knocked on the door to the apartment, he heard footsteps inside. Moments later, Detective Michael Cauley of the Massachusetts Bay Transportation Authority (MBTA) police, who was stationed at the back stairwell of the apartment complex, saw the defendant and Serna open the door. They paused in the entrance and then ran back into the apartment. The two men apparently jumped out a window, evading the police as Detective Cauley awaited backup before entering the apartment. Police officers saw Serna fleeing down the street and gave chase. Just before he was apprehended, Serna threw a foil ball over a fence near an MBTA station. The police recovered the package and found that it contained 27.37 grams of a powder that was sixty-four per cent cocaine. Serna was arrested. The defendant, however, escaped.

That evening, the police returned to the apartment from which the defendant had fled to execute a search warrant. They recovered approximately twenty-two kilograms of seventy-nine per cent pure cocaine. Trooper Marron estimated that the cocaine had a street value of approximately $2.2 million. The police also recovered papers in the name of Teodoro Ospina, an alias known by the police to have been used by the defendant.

On August 28, 2000, a grand jury indicted the defendant on a charge of trafficking in cocaine in an amount exceeding 200 grams, in violation of G. L. c. 94C, § 32E. A summons was issued for his appearance, but the defendant failed to appear, and a default warrant was issued. On May 9, 2002, border patrol of-

ficers in Las Cruces, New Mexico, apprehended the defendant as he attempted to flee into Mexico. He was returned to Massachusetts.

On June 18, 2002, the defendant was arraigned before a magistrate who referred the matter to a judge in the Superior Court. The Commonwealth, pursuant to G. L. c. 276, § 57, and *Serna* v. *Commonwealth*, 437 Mass. 1003 (2002), moved to have the defendant held without bail. It asserted that given the strength of the case against him, the seriousness of the charges, the defendant's initial flight from his apartment building, his subsequent effort to flee the country, and his lengthy default, the judge could not be reasonably assured that the defendant would appear to face the charge against him if bail were set. The defendant objected on the ground that G. L. c. 276, § 57, was unconstitutional because it violated his due process rights under the United States Constitution and the Massachusetts Declaration of Rights. The defendant also objected to the constitutionality of § 57 based on *Aime* v. *Commonwealth*, 414 Mass. 667 (1993). The judge gave the defendant an opportunity to continue the case for an evidentiary hearing. The defendant objected, arguing that § 57 did not authorize such a hearing and requesting release on reasonable bail. He asserted that the weaknesses in the Commonwealth's case, the lack of any connection between the defendant and the apartment, the fact that the defendant did not have a criminal record, the defendant's claimed right to political asylum in this country,[1] and the defendant's assertion of a meritorious suppression motion[2] warranted reasonable bail. The judge allowed the Commonwealth's motion and detained the defendant, without bail, pending trial.

2. *Discussion.* The thrust of the defendant's argument is that G. L. c. 276, § 57, violates the procedural and substantive due

[1]The defendant's brother had been granted political asylum in the United States because of a potential danger to his life and to the lives of his family members in Colombia, South America. The defendant asserted that he would be entitled to political asylum for the same reason.

[2]On November 19, 2002, the judge allowed the defendant's suppression motion, concluding that the affidavit in support of the search warrant failed to establish probable cause to believe that drugs were being sold or stored in the apartment. The record indicates that on November 27, 2002, the defendant orally requested reconsideration of the June 19, 2002, order based on this development, and that his request was denied.

process provisions of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He contends that G. L. c. 276, § 57, includes none of the due process protections afforded by G. L. c. 276, §§ 58 and 58A, or by the Federal Bail Reform Act of 1984, 18 U.S.C. § 3142 (2000). In particular, the defendant points out that G. L. c. 276, § 57, does not expressly provide that defendants may testify on their own behalf at bail hearings, call witnesses, or cross-examine adverse witnesses. Moreover, he asserts that the standard of proof by which a judge may hold a defendant without bail prior to trial is "amorphous" because it is simply left to the "discretion" of each individual judge. The defendant further contends that the denial of bail under G. L. c. 276, § 57, unduly infringes on his right to liberty and freedom from physical restraint, particularly where he has not been charged with a capital crime.

General Laws c. 276, § 57, provides, in pertinent part, as follows:

"A justice of the supreme judicial or superior court . . . upon application of a prisoner or witness held under arrest or committed . . . may inquire into the case and admit such prisoner or witness to bail if he determines that such release will reasonably assure the appearance of the person before the court and will not endanger the safety of any other person or the community . . . ."

We have held that this statutory provision, rather than G. L. c. 276, § 58, is applicable to the setting of bail in the Superior Court.[3] See Serna v. Commonwealth, supra at 1003; Commesso v. Commonwealth, 369 Mass. 368, 372 (1975) (G. L. c. 276,

---

[3]General Laws c. 276, § 58, provides, in relevant part, that "[a] justice or a clerk or assistant clerk of the district court . . . in accordance with the applicable provisions of section fifty-seven, shall, when a person is held under arrest or committed either with or without a warrant for an offense other than an offense punishable by death . . . hold a hearing in which the defendant and his counsel, if any, may participate and inquire into the case and shall admit such person to bail on his personal recognizance without surety unless said justice, clerk or assistant clerk . . . determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person before the court." The preferred method of disposition under G. L. c. 276, § 58, since it was rewritten by St. 1970, c. 499, § 1, is release on personal

§ 57, authorizes Superior Court judge to admit "prisoner or witness" to bail). We are only concerned here with bail pursuant to G. L. c. 276, § 57, as it relates to considerations of flight, not dangerousness. The Commonwealth has not asserted that the release of the defendant on bail would endanger the safety of any members of the community.

(a) *Substantive due process.* "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin* v. *California*, 342 U.S. 165, 172 (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937)." *United States* v. *Salerno*, 481 U.S. 739, 746 (1987). "In substantive due process analysis, the nature of the individual interest at stake determines the standard of review that courts apply when deciding whether a challenged statute meets the requirements of the due process clause. Where a right deemed to be 'fundamental' is involved, courts 'must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation,' *Moore* v. *East Cleveland*, 431 U.S. 494, 499 (1977), and typically will uphold only those statutes that are narrowly tailored to further a legitimate and compelling governmental interest." *Aime* v. *Commonwealth*, *supra* at 673, citing *United States* v. *Salerno*, *supra* at 748-751.

Freedom from physical restraint is a fundamental right. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 503 (2000). However, a defendant does not have a constitutional right to be released on bail prior to trial.[4] See *United States* v. *Salerno*, *supra* at 748-751, 753-755 (no absolute right to bail); *Mendonza* v. *Commonwealth*, 423 Mass. 771, 782 n.4 (1996) ("there has never

recognizance. See *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999), and cases cited. "This statute 'was not intended to give the courts discretion to deny bail but rather to establish the right of the accused, in most circumstances, to be admitted to bail.' " *Commonwealth* v. *Finelli*, 422 Mass. 860, 863 (1996), quoting *Commonwealth* v. *Roukous*, 2 Mass. App. Ct. 378, 381 (1974). See *Commonwealth* v. *Hampe*, 419 Mass. 514, 519 (1995) ("an arrestee must be released on bail without surety unless there is a risk that he will not appear in court"). As such, the statute enhances the rights of a defendant charged in the District Court from what they had been at common law. See Note, Preventive Detention Before Trial, 79 Harv. L. Rev. 1489, 1493 (1966).

[4]The Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights do provide that a defendant has a

been a right to bail in capital cases"). See also K.B. Smith, Criminal Practice and Procedure § 481 (2d ed. 1983) ("There is no provision in the United States Constitution or the Constitution of Massachusetts as to the right to bail of a person accused of a crime"). "[T]he Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, [and] confinement of such persons pending trial is a legitimate means of furthering that interest." *Bell* v. *Wolfish*, 441 U.S. 520, 534 (1979). See *United States* v. *Salerno, supra* at 749 ("an arrestee may be incarcerated until trial if he presents a risk of flight"); *Commonwealth* v. *Flaherty*, 384 Mass. 802, 803 (1981) (history of escapes and defaults would justify denying bail where defendant charged with murder in the first degree).

The defendant argues that G. L. c. 276, § 57, lacks ascertainable standards that limit a judge's discretion to considerations of flight when setting bail. We disagree. As it is applicable to this case, § 57 merely codifies the inherent authority of a Superior Court judge, under common law, to deny bail where, as here, the defendant poses a serious flight risk.[5] Under common law, the factors that a judge may properly consider when setting bail are well known.

"The right to be bailed in certain cases is as old as the law of England itself . . . ." 1 Stephen, History of the Criminal Law of England 233 (1883). See *Commonwealth* v. *Baker*, 343 Mass. 162, 165-168 (1961) (discussion of history of bail). The essential purpose of bail is to secure the presence of a defendant at trial to ensure that, if the defendant is guilty, justice will be served. See *Commonwealth* v. *Ray*, 435 Mass. 249, 255 n.12 (2001), citing *Commonwealth* v. *Stuyvesant Ins. Co.*, 366 Mass. 611, 614 (1975); 4 W. Blackstone, Commentaries *294-295. See also L.B. Orfield, Criminal Procedure from Arrest to Appeal 104, 108 (1947) (Massachusetts has adhered to common-

---

constitutional right not to be subject to "excessive" bail. The defendant here has not raised an excessive bail claim.

[5]The language in G. L. c. 276, § 57, that permits a judge in the Superior Court to consider dangerousness authorizes preventive detention and is a legislative enhancement of the common-law powers of a judge to set bail. The issue of dangerousness, as noted, is not involved in this appeal.

law rule allowing discretionary power in granting or refusing bail).

The ability to secure a defendant's presence at trial is of fundamental importance to the basic functioning of the judiciary, without which justice cannot be properly administered. We reaffirm a principle that has long been a part of the common law of this Commonwealth. A judge in the Superior Court has the inherent authority to deny a defendant's motion for admittance to bail where bail will not reasonably assure the defendant's appearance before the court. See *Commonwealth* v. *Wright*, 11 Mass. App. Ct. 276, 282 (1981) (bail properly denied where defendant's interstate "pimping operations" rendered him flight risk); *People* v. *Bailey*, 167 Ill. 2d 210, 239-240 (1995) (provision of code of criminal procedure merely codifies court's inherent authority to deny bail in particular situation). See also *State* v. *Marro*, 68 Conn. App. 849, 859 (2002) (court has inherent power to admit to bail where "defendant is in its custody"); *State* v. *Wadsworth*, 139 Wash. 2d 724, 740-741 (2000) (court has inherent power to grant bail). The inherent powers of the judiciary are those "whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases." *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 672 (1996), quoting *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 535 (1982). See *Jake J.* v. *Commonwealth*, 433 Mass. 70, 77 (2000) (court has inherent authority to exercise own legitimate powers). Inherent judicial authority is "not limited to adjudication, but includes certain ancillary functions, such as rule-making and judicial administration, which are essential if the courts are to carry out their constitutional mandate." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 510 (1972). "Although inherent powers may be recognized by statute, they exist independently, because they 'directly affect[] the capacity of the judicial department to function' and cannot be nullified by the Legislature without violating art. 30 [of the Massachusetts Declaration of Rights]." *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 397 (2003), quoting *Opinion of the Justices*, 279 Mass. 607, 613 (1932). Because a

court's inherent powers "have their basis in the Constitution, regardless of any statute, every judge must exercise his inherent powers as necessary to secure the full and effective administration of justice." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester, supra* at 514. Where necessary to secure a defendant's appearance, those inherent powers include the power to order a defendant held without bail.

The well-defined framework for setting bail under the court's inherent powers is reflected in § 57. A judge may admit a defendant to bail if the judge determines that the release of the defendant "will reasonably assure the appearance of the person before the court." G. L. c. 276, § 57. The statute also incorporates by reference "rules established by the supreme judicial or superior court."[6] *Id.* Judges have long applied a similar standard when deciding, in the exercise of their discretion, whether to allow a defendant's motion for a stay of execution of sentence pending appeal under G. L. c. 279, § 4. See *Commonwealth* v. *Allen,* 378 Mass. 489, 498-499 (1979) (factors to be considered on motion for stay of execution are

---

[6]The Reporters' Notes to Mass. R. Crim. P. 6 (relating to summons to appear and arrest warrants) include a discussion of the ways of guaranteeing a defendant's appearance in court. "The factors to be considered by the court in its decision upon the conditions necessary to assure the defendant's presence are reflected in [Rule 2 of] the Rules of the Superior Court Governing Persons Authorized to Take Bail . . . (1972):

> "The purpose of setting terms for any pretrial release is to assure the presence at court of the person released. Any person charged with an offense, other than an offense punishable by death [*sic*], is required by law to be released on his personal recognizance pending trial unless the person setting the terms of release determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. In making a determination as to what form of release to set, the following factors shall be considered: (1) the nature and circumstances of the offense charged, (2) the accused's family ties, (3) his financial resources, (4) his length of residence in the community, (5) his character and mental condition, (6) his record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or (7) any failure to appear at any court proceedings."

Reporters' Notes to Mass. R. Crim. P. 6, Mass. Ann. Laws, Rules of Criminal Procedure 61 (1997). These historical factors for bail, along with several new considerations, continue to appear in Rule 2 of the Rules Governing Persons Authorized to Take Bail (2003).

comparable to factors considered for bail). In making such a decision, the judge must consider, inter alia, the possibility of a defendant's flight to avoid punishment. See *Commonwealth* v. *Hodge (No. 1)*, 380 Mass. 851, 855 (1980) (relevant factors include "familial status, roots in the community, employment, prior criminal record, and general attitude and demeanor"); *Commonwealth* v. *Levin*, 7 Mass. App. Ct. 501, 505 (1979) (same). "These considerations involve determinations of fact and the exercise of sound, practical judgment, and common sense. The exercise of discretion by the trial judge will be upheld unless it is shown that he abused that discretion." *Commonwealth* v. *Hodge (No. 1)*, *supra.* See *Commonwealth* v. *Levin*, *supra.* The provisions of § 57 applicable to this case are narrowly tailored to the State's legitimate and compelling interest in assuring the defendant's presence at trial. As such, the principles of substantive due process are satisfied.

(b) *Procedural due process.* "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976). This requirement has traditionally been referred to as 'procedural' due process." *United States* v. *Salerno*, 481 U.S. 739, 746 (1987). The defendant argues that § 57 fails to meet the requirements of procedural due process because (1) it does not afford defendants the right to an evidentiary hearing at which they may testify on their own behalf, present witnesses and evidence, and cross-examine witnesses; (2) it fails to require proof that the defendant is dangerous by clear and convincing evidence; and (3) it is void for vagueness.

In support of his argument, the defendant erroneously contends that this case is controlled by our decision in *Aime* v. *Commonwealth*, 414 Mass. 667 (1993). There, we held that challenged portions of the 1992 amendments to G. L. c. 276, § 58, which empowered a judicial officer to refuse to release an arrestee on bail if the judicial officer determined, in the exercise of his or her discretion, that "such release [would] endanger the safety of any other person or the community," violated the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 668. The 1992 amendments to G. L.

c. 276, § 58, created a broad preventive detention scheme, the primary purpose of which was to incapacitate those individuals merely suspected of crimes who were believed to be dangerous. *Id.* at 682. Here, the Commonwealth has not asserted that the defendant's release will endanger the safety of another person or the community. This is not a case of preventive detention based on a judge's prediction of a defendant's future dangerous conduct. Rather, this is a case of assuring the appearance of a defendant who has already been indicted by a grand jury, a well-established and historic reason for pretrial detention, based on the judge's considered evaluation of the defendant's past conduct, his character and mental condition, and his ties to the community. Accordingly, *Aime* v. *Commonwealth, supra,* is not controlling.

A fundamental requisite of "procedural" due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552 (1965). The concept is flexible, see *Roe* v. *Attorney Gen.,* 434 Mass. 418, 427 (2001), and the features of the required hearing will be determined by the "nature of the case." *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950).

The potential deprivation of liberty implicates the protections of procedural due process. See *Commonwealth* v. *Travis,* 372 Mass. 238, 250 (1977) (due process protections attach to proceedings for civil commitment of sexually dangerous persons because of potential for loss of liberty). "In determining what process is due . . . this court 'must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs.' " *Commonwealth* v. *Barboza,* 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982), quoting *Thompson* v. *Commonwealth,* 386 Mass 811, 817 (1982). See *Mathews* v. *Eldridge, supra* at 334-335.

The conflict between the significant liberty interest of a defendant who is held while awaiting trial and the compelling interest of the State in securing a defendant's appearance for that trial is indeed substantial. However, a defendant is entitled

to be present[7] at all critical stages of the proceedings, and his presence is essential to the State's ability to administer the criminal justice system. See *Snyder* v. *Massachusetts*, 291 U.S. 97, 107-108 (1934) ("the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence"). If a defendant is held pending trial, the consequences to him, although significant, are temporary. Moreover, his case must be given preference over other criminal cases in the scheduling of trials, see Mass. R. Crim. P. 36 (a) (1), 378 Mass. 909 (1979), and he may press his right to a speedy trial by motion. The balance of interests favors the State.

The inquiry at a bail proceeding under § 57 where the only issue is the amount of bail that will reasonably assure the defendant's presence at trial involves the presentation of evidence that, in the vast majority of cases, is undisputed, a matter of public record, or readily explained. It also involves the application of factors, previously noted, that are familiar, straightforward, and relatively simple. The necessary determination can be adequately presented and decided based on documents (e.g., police reports, witness statements, letters from employers and others, and probation records) and the representations of counsel. Cf. *Snow* v. *Commonwealth*, 404 Mass. 1007 (1989) (judge may rely on hearsay statements and representations of counsel). Of course, the evidence must be sufficiently reliable to avoid any significant risk of an erroneous deprivation of liberty. See *Thompson* v. *Commonwealth, supra* at 817. A bail proceeding under § 57 is not intended to be a mini-trial, and the rules of evidence do not apply. A full-blown evidentiary hearing that includes the right to present and cross-examine witnesses is not needed or required. However, such a hearing, or some variation, may be held in the discretion of the judge when the circumstances of a particular case warrant.

Here, the defendant was properly given a hearing prior to the judge ruling on his motion for admittance to bail, and he took advantage of the opportunity, attacking the strength of the Com-

[7]A defendant's presence may be waived or excused in certain circumstances recognized under Mass. R. Crim. P. 18, 378 Mass. 887 (1979). Such circumstances are not present here.

monwealth's case and asserting his own good character and ties to the community. The judge offered to continue the case for an evidentiary hearing, but the defendant objected and rejected the offer. All that was at issue was whether, based on his prior conduct, the defendant was a flight risk. The defendant was known to use an alias, originally eluded several police officers when they sought to arrest him on outstanding default warrants, subsequently failed to appear before the court after being indicted on a charge of cocaine trafficking,[8] and was only apprehended eighteen months later when he was caught by border patrol officers fleeing into Mexico. The judge could properly determine, based on statements from both the prosecutor and defense counsel, that there were no conditions that could be imposed on the defendant that would secure his appearance at future court proceedings. Cf. *United States* v. *Abrahams,* 575 F.2d 3 (1st Cir. 1978) (unusual circumstances supported conclusion that defendant was flight risk and should be held without bail pending trial).

The defendant argues that § 57 is unconstitutional because it fails to articulate any standard of proof for determining whether a person presents a risk of flight and, if a person does present such a risk, that there is no amount of bail that will assure his presence as required. "The standard of proof is an element of the minimum procedural due process required in proceedings affecting protected 'liberty' or 'property' interests." *Spence* v. *Gormley,* 387 Mass. 258, 274 (1982), citing *Santosky* v. *Kramer,* 455 U.S. 745, 755-756 (1982). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington* v. *Texas,* 441 U.S. 418, 423 (1979). Decisions under the Federal Bail Reform Act of 1984, 18 U.S.C. § 3142, which is also silent as to the burden of proof for determinations whether a defendant poses a serious flight risk and whether any condition or combination of conditions will reasonably assure the appearance of a defendant, indicate that the appropriate standard is

---

[8]The amount of cocaine at issue, twenty-two kilograms valued at approximately $2.2 million, reasonably suggested that the defendant, or persons with whom he engaged in trafficking, had both the ability to post and the willingness to forfeit enormous sums of money in order to keep the defendant out of the hands of law enforcement officials.

preponderance of the evidence. See, e.g., *United States* v. *Patri-arca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States* v. *Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States* v. *Vortis*, 785 F.2d 327, 328-329 (D.C. Cir.), cert. denied, 479 U.S. 841 (1986). We see no reason to impose a higher burden of proof.[9],[10]

Finally, there is no merit to the defendant's argument that the standard for admitting a person to bail under G. L. c. 276, § 57, is unconstitutionally vague. That standard, whether "release [on bail] will reasonably assure the appearance of the person before the court," and its underlying factors are, as previously discussed, part of our common law and are well understood. Cf. *Massachusetts Fed'n of Teachers* v. *Board of Educ.*, 436 Mass. 763, 780-781 (2002). Such common-law considerations are among the same as those contained in G. L. c. 276, § 58, which the defendant does not consider to be vague.

3. *Conclusion.* The defendant has failed to show that his due process rights have been violated. The order of the Superior Court judge denying the defendant's motion to be admitted to bail pursuant to G. L. c. 276, § 57, is affirmed.

*So ordered.*

---

[9]We note that the civil confinement of a mentally ill person requires the Commonwealth to prove, beyond a reasonable doubt, that such person poses a substantial risk of physical harm to others. See *Commonwealth* v. *Nassar*, 380 Mass. 908, 916 (1980). Similarly, proof beyond a reasonable doubt of dangerousness is required to commit a sexually dangerous person. See *Mendonza* v. *Commonwealth*, 423 Mass. 771, 782-783 (1996). This high standard of proof is necessary because the Commonwealth is seeking to confine the individual for a period of time that is potentially indefinite, perhaps even lifelong. *Id.* at 783. In contrast, pretrial detention to secure a defendant's presence before the court is limited and temporary; the "main event" is the trial at which the defendant's liberty will be definitively adjudicated. *Id.*

[10]Once a decision to admit a defendant to bail has been reached, the amount of bail imposed is a matter of discretion, see *Matter of Troy*, 364 Mass. 15, 39 (1973), subject to the constitutional prohibitions against excessive bail.