**STATE of Minnesota, Respondent,**

v.

**Jeremy Mark LeDOUX, Appellant.**

**No. A08–0260.**

Supreme Court of Minnesota.

Aug. 13, 2009.

Michael Fritz, Becker County Attorney, Jennifer Jacobs, Assistant Becker County Attorney, Detroit Lakes, MN, for respondent.

William S. Kirschner, Kirschner Law Office, Fargo, ND, for appellant.

## OPINION

ANDERSON, PAUL H., Justice.

Jeremy Mark LeDoux was charged with First–Degree Criminal Sexual Conduct, Minn.Stat. § 609.342 (2008), Possession of Pornographic Works Involving Minors, Minn.Stat. § 617.247 (2008), Possession of a Controlled Substance in the Fifth Degree, Minn.Stat. § 152.025 (2008), and Furnishing Alcohol to a Minor, Minn.Stat. § 340A.503 (2008). In connection with those charges, the Becker County District Court set bail at a combined amount of $263,000. LeDoux requested a bail hearing, at which he subpoenaed several witnesses. The court quashed the subpoenas, concluding that LeDoux did not have a right to call witnesses at a bail hearing, and affirmed the existing bail amount. LeDoux appealed to the Minnesota Court of Appeals, arguing: (1) he had a right to call witnesses at a bail hearing, and (2) the bail amount was excessive. The court of appeals affirmed. We affirm.

Appellant Jeremy Mark LeDoux's first offense occurred on May 19, 2005, in Becker County. While working at a gas station, LeDoux sold a six-pack of beer to a 19–year–old man without asking for identification. The man who purchased the beer was working on behalf of the Becker County Sheriff. The State subsequently charged LeDoux with furnishing alcohol to a minor in violation of Minn.Stat. § 340A.503, but the summons and complaint were not issued until November 1, 2005. The summons, which set a court appearance for November 14, 2005 was mailed to LeDoux. LeDoux did not appear for court on November 14, 2005, and four days later a warrant was issued for his arrest.

On February 2, 2006, in Frazee, Minnesota, LeDoux was stopped by a police officer for speeding. When the officer checked LeDoux's record, he discovered that, in addition to possessing a suspended driver's license, LeDoux had an outstanding arrest warrant for his failure to appear

on the furnishing alcohol to a minor charge. The officer arrested LeDoux and took him to the Becker County jail, where, during booking, the police discovered two white pills in LeDoux's wallet that were later identified as Vicodin. LeDoux was then charged with one count of possession of a controlled substance in the fifth degree, Minn.Stat. § 152.025. After being charged, LeDoux was released on his own recognizance. An omnibus hearing was set for May 22, 2008, on both the furnishing alcohol to a minor charge and the possession charge. LeDoux failed to appear at the hearing and another arrest warrant was issued.

On August 27, 2007, two people with whom LeDoux had been staying arrived at the Detroit Lakes Police Station carrying a computer tower. They told the police that they had seen a video file on LeDoux's computer depicting sexual activity involving a minor. The next day, after receiving the information, the police arrested LeDoux on the outstanding warrants for providing alcohol to a minor and possession of a controlled substance. The district court imposed bail of $3,000 for the alcohol to a minor charge and $10,000 on the possession charge. LeDoux did not meet the bail amount and remained in jail.

When confronted with the allegations regarding the contents of his computer, LeDoux admitted to possessing over 100 photographs and video files of minors engaging in sexual acts. On October 2, 2007, LeDoux was arraigned before the Becker County District Court in Detroit Lakes on a charge of possessing pornographic works involving a minor in violation of Minn.Stat. § 617.247. The court set bail at $50,000 with the additional condition that LeDoux not have any contact with minors or use the internet without court approval. Again, LeDoux did not meet bail and remained in jail.

On October 18, 2007, a juvenile female came to the Detroit Lakes police and alleged that LeDoux had sexual contact with her multiple times during 1999 and 2000. The juvenile was nine years old at the time of the first alleged sexual contact. The alleged incidents included inappropriate touching as well as sexual penetration as defined by Minnesota law. As a result of these allegations, LeDoux was arraigned on November 15, 2007, for the charge of first-degree criminal sexual conduct, Minn. Stat. § 609.342. Bail on this charge was set at $200,000, subject to the conditions that LeDoux not leave the state and not have any contact with the juvenile victim.

The combined bail for the four charges against LeDoux totaled $263,000. LeDoux could not afford to post bail in this amount and challenged the bail amount as excessive. The district court set the matter for hearing and ordered the Department of Corrections to prepare a bail-bond study. The corrections officer preparing the bail-bond study conducted interviews with LeDoux's former girlfriend, the juvenile victim's mother, and LeDoux's mother. The corrections officer recommended that the bail amount was supported by the facts, based in part on "community reaction" and because of the seriousness of the crimes as well as community safety. After receiving the bail-bond study, LeDoux's counsel subpoenaed the witnesses interviewed in the bond study and the corrections officer who authored the study.

At the bail hearing, the district court determined that LeDoux did not have the right to call witnesses and quashed the subpoenas. But the court did allow LeDoux to make various offers of proof. First, LeDoux offered proof to rebut statements by the witnesses in the bail-bond study that they were "terrified" of him or regarded him as a threat to the community. LeDoux offered information that in

the years since the alleged sexual assault on the juvenile victim, he and the victim became closer and frequently had non-sexual contact with each other. He also offered proof that the victim's mother would testify that, despite her desire to avoid contact with LeDoux, she had helped him obtain health insurance and mental health counseling. In addition, LeDoux offered proof that his ex-girlfriend was not terrified of him because, despite the fact that she had obtained an order for protection,[1] she had repeatedly contacted him in jail.

LeDoux also made offers of proof as to his good character. LeDoux made an offer of proof that a counseling psychologist who was a friend of his mother would say that LeDoux was a person of good character and was not a threat to the community. He also offered proof that his mother would allow him to live with her, would assist him after his release, and believed that LeDoux did not represent a threat to the community.

Finally, LeDoux attempted to call as a witness the corrections officer who prepared the bail-bond report. LeDoux claimed that the officer would testify as to LeDoux's lifelong residency in the area, lack of family ties outside the area, and lengthy employment history. LeDoux wanted the opportunity to cross-examine the officer about his conclusions as to LeDoux's mental condition. LeDoux also challenged the officer's conclusion that "community reaction" would be poor if LeDoux were released because "community reaction" is not a permitted factor for determining the amount of bail under Minn. R.Crim. P. 6.02. LeDoux believed the officer would testify that none of the witnesses LeDoux sought to call had been threatened by LeDoux.

After LeDoux finished making his offers of proof, the district court took the matter under advisement. Two days later, on January 24, 2008, the court issued an order and memorandum affirming the $263,000 bail amount and denying LeDoux's claim that he should be permitted to call witnesses. The court explained that the bail amount was reasonable because the charge of first-degree criminal sexual conduct was serious and represented a serious community safety risk. LeDoux appealed the decision and the court of appeals affirmed. *State v. LeDoux*, No. A08–260, Order at 6 (Minn.App. filed May 8, 2008). LeDoux petitioned our court for review, claiming that (1) he has a due process right to call witnesses at his bail hearing, and (2) his bail was unconstitutionally excessive. On September 15, 2008, after both parties had filed their briefs, LeDoux pleaded guilty to all four charges. He was convicted on January 10, 2009.

I.

■ LeDoux argues that he should have been able to call witnesses at his bail hearing under the due process clause of the Minnesota Constitution, Article I, Section 7. But, LeDoux has pleaded guilty and been convicted of the charges at issue since he petitioned for review. Generally, issues of bail are considered moot after conviction. *State v. Huber*, 275 Minn. 475, 478, 148 N.W.2d 137, 140 (1967). Therefore, as a threshold matter, we must determine whether an exception to the mootness doctrine applies here.

■ We will review a case that is otherwise moot if the issues raised are capable of repetition yet evading review. *State v. Arens*, 586 N.W.2d 131, 133 (Minn. 1998). The issue must also be functionally

---

1. The underlying conduct that led to the Order for Protection was not discussed in the bail-bond study, nor was it discussed during LeDoux's offer of proof to the district court.

justiciable and of statewide significance. *State v. Brooks,* 604 N.W.2d 345, 347–48 (Minn.2000). An issue is functionally justiciable if the record contains "the raw material necessary for judicial decision-making." *Id.* at 348. The issue of whether witnesses may be called at a bail hearing is capable of repetition because a bail hearing can be requested in any criminal proceeding for which bail is imposed. Minn. R.Crim. P. 6.02, subd. 4. Further, because the case against many defendants will be resolved in the time required to obtain review by our court, this issue is likely to evade review. The issue raised here is also functionally justiciable, because it was fully briefed before LeDoux's plea and conviction. Finally, this is an issue of statewide significance because bail is imposed in a large number of cases throughout the state. Accordingly, we hold that the issue of whether LeDoux had a due process right to call witnesses at his bail hearing is an issue that is capable of repetition yet evading review, is functionally justiciable, and therefore should be addressed on the merits.

## II.

■ Having concluded that the issue is not moot, we now discuss LeDoux's argument that the corrections officer who prepared the bail bond study relied on an impermissible factor—"community reaction"—when recommending that LeDoux's bail amount be affirmed. An appearance bond or additional conditions should be imposed if a release would be inimical to public safety or if a release without conditions would not reasonably assure the appearance of the defendant. Minn. R.Crim. P. 6.01.

Minnesota Rules of Criminal Procedure 6.02, subd. 2 provides that, when determining the proper conditions of release, the officer or the court should take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions, record of appearance at court proceedings or flight to avoid prosecution, and the safety of any other person or of the community.

Here, the corrections officer stated that "community reaction would be poor" if LeDoux was released on a low bail amount. Community reaction is not an approved factor under Rule 6.02, nor does it address the two purposes of release on bail: public safety and assuring the defendant's appearance. Therefore, we agree with LeDoux that it was improper for the officer to rely on community reaction as a reason to support the previously imposed appearance bond amount. But, because the district court only indicated reliance on the officer's conclusions as to LeDoux's "alleged crimes and community safety," we conclude that the officer's improper comments regarding community reaction did not affect the outcome of the bail hearing and therefore were harmless.

## III.

■ We now address the merits of LeDoux's due process claim. The Minnesota Constitution provides that "[a]ll persons before conviction shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." Minn. Const. art. I, § 7. Because capital offenses no longer exist in Minnesota, bail is an absolute right in all cases. *State v. Pett,* 253 Minn. 429, 433, 92 N.W.2d 205, 207–08 (1958). The general purpose of bail is to permit a defendant's release pending trial if his appearance at trial can be otherwise guaranteed. *State v. Mastrian,* 266 Minn. 58, 59,

122 N.W.2d 621, 622 (1963). Bail is meant to "limit government power to detain the accused prior to trial." *State v. Brooks,* 604 N.W.2d 345, 350.

▮ The Minnesota Rules of Criminal Procedure provide guidance on the procedure for bail hearings, although the rules cannot diminish Constitutional protection. Henry W. McCarr, *Criminal Law and Procedure* 105 (3d ed., 2001); *see, e.g., State v. Amos,* 262 N.W.2d 435, 437 (Minn. 1978) (considering argument that Minn. R.Crim. P. 9.02 was unconstitutional). As discussed above, the rules provide for release by an appearance bond, as well as the imposition of additional conditions if "the court, judge or judicial officer determines, in the exercise of discretion, that such [an unconditional] release will be inimical of public safety or will not reasonably assure the appearance of the person for trial or hearing." Minn. R.Crim. P. 6.02, subd. 1. The rules also set out a list of factors that the court should determine "on the basis of available information...." Minn. R.Crim. P. 6.02, subd. 2.

To determine the conditions of release, the district court is allowed to investigate the defendant's background. Minn. R.Crim. P. 6.02, subd. 3. The investigation is made by "[t]he court's probation service or other qualified facility available to the court...." *Id.* The court's investigation "shall not preclude the use of evidence obtained by other independent investigation." *Id.*

Here, the appearance bond was set in the cumulative amount of $263,000. Le-Doux challenged the amount as excessive, and, as permitted under Minn. R.Crim. P. 6.02, subd. 3, the district court ordered a bail-bond study. The study was completed by an officer of the Department of Corrections, who reviewed the charges and also interviewed several people associated with LeDoux. The corrections officer recom-

mended that because of the seriousness of the crimes with which LeDoux had been charged and because of community safety concerns, the court should not alter the amount of bail imposed. At the bail hearing, LeDoux attempted to call witnesses, including the alleged juvenile victim, to rebut the statements included in the study. The court did not allow the witnesses to testify, stating that there is "no authority which allows Defendant to subpoena an alleged victim in a criminal sexual conduct case at this point in the proceedings." *State v. LeDoux,* No. K2–06–1785, Order at 2 (Becker Cty. Dist. Ct. filed Jan. 24, 2008). On appeal, LeDoux argues that he has a procedural due process right to call witnesses at a bail hearing.

▮ Whether due process is required in a particular proceeding is an issue of law that we review de novo. *Carrillo v. Fabian,* 701 N.W.2d 763, 768 (Minn.2005). The Minnesota Constitution provides that "[n]o person shall be held to answer for a criminal offense without due process of law ... nor be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. The Fourteenth Amendment of the United States Constitution similarly provides that "[n]o state shall ... deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. In order for a due process violation to exist, a person must suffer a loss of a liberty interest or property right. *State v. Mitchell,* 577 N.W.2d 481, 492 (Minn.1998). If we conclude that a defendant was deprived of a liberty interest or property right, then we must determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Carrillo,* 701 N.W.2d at 768.

▮ We first address the question of whether LeDoux was deprived of a liberty

interest. In doing so, we "look to the nature of the interest to determine if it is within the scope of protection of the Fourteenth Amendment." *C.O. v. Doe*, 757 N.W.2d 343, 349 (Minn.2008). The United States Supreme Court has held that pretrial detention infringes "the individual's strong interest in liberty" and, therefore, raises procedural due process concerns. *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[2] In *Salerno*, however, the defendant faced pretrial detention with no opportunity for bail. Here, although LeDoux was detained and bail had been set, upon posting of a $263,000 appearance bond LeDoux would have been released.

Despite the fact that LeDoux could have been released on bail, his liberty was infringed. LeDoux was unable to post the required amount for his appearance bond, and was therefore unable to procure his release. Although LeDoux's liberty interest here may not have risen to the same level of the interest that existed in *Salerno*—where federal law provided for complete preventive detention without the opportunity for bail—LeDoux still had a strong liberty interest because he was held in jail.[3]

■■■ Having concluded that LeDoux has a liberty interest at stake, we must determine the extent of that liberty interest and what process is required to protect it. In doing so, we must balance the liberty interest at stake and the risk of that interest being erroneously deprived

through an unfair process, against the nature of the State's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As we have previously discussed, LeDoux has a strong liberty interest in not being confined. We balance that interest against the State's interest in guaranteeing LeDoux's appearance at court proceedings as well as in ensuring public safety. *See* Minn. R.Crim. P. 6.02, subd. 1.

■■■ Procedural due process requires that the defendant have an opportunity to be heard "at a meaningful time in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *see also State v. Quick*, 659 N.W.2d 701, 712–13 (Minn.2003). We have consistently held that, at trial, due process requires that a defendant be permitted to call witnesses. *See Quick*, 659 N.W.2d at 715; *State v. Richardson*, 670 N.W.2d 267, 277 (Minn.2003); *State v. Richards*, 495 N.W.2d 187, 193 (Minn. 1992). Because a defendant has a constitutional right to present a defense, it follows that the defendant also has a right to offer the testimony of witnesses that supports the defendant's position. *Quick*, 659 N.W.2d at 715.

■■■ But, as the State points out, LeDoux's liberty interest at a bail hearing to determine the bail amount is less than the liberty interest at stake in a full trial where the issue of whether the defendant is guilty or not guilty is being determined.

---

**2.** *Salerno* involves the Bail Reform Act of 1984 which expressly provides for the right of defendants to call and cross-examine witnesses at a detention hearing. 18 U.S.C. 3142(f) (Supp. V 1987).

**3.** Because LeDoux was unable to post the bail amount, we do not need to reach the issue of whether imposition of pretrial conditions of release deprive a defendant of a constitutionally protected liberty interest. However, we

note that in *United States v. MacDonald*, the United States Supreme Court said that the right to a speedy trial exists in part because of the possibility of lengthy pretrial detention, but also because of "the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail...." 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

For instance, while a criminal defendant has the right to an attorney at trial, *see Gideon v. Wainwright,* 372 U.S. 335, 342–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Dziubak v. Mott,* 503 N.W.2d 771, 772–73 (Minn.1993), a defendant does not necessarily have the right to an attorney at a bail hearing. *State v. Beltowski,* 281 Minn. 28, 32–33, 160 N.W.2d 705, 708 (1968) (holding that because the "only action taken on [the defendant's] case during that period [without counsel] was to increase the amount of his bail" and that the increase was not "prejudicial to defendant's substantial rights" the defendant was not entitled to assistance of counsel).

The State argues that the amount of process due at a bail hearing should be guided by our decision in *State v. Rud,* 359 N.W.2d 573 (Minn.1984). We agree. In *Rud,* we considered whether a defendant could call a victim to testify in a probable cause hearing. We determined that in a probable cause hearing, due process did not require "the full panoply of adversarial safeguards such as witness confrontation, cross-examination, and compulsory process for witnesses." *Id.* at 577. Thus, we held that a defendant may only call a victim as a witness at a probable cause hearing if the defendant could make a "persuasive offer of proof that the victim's testimony, when considered in the context of all the admissible evidence that the prosecutor will produce at trial, will lead to a dismissal of the charges." *Id.* at 579. We concluded that a defendant is not permitted to call a victim in a probable cause hearing "in the hope of discovering more information" or " 'as a substitute for disclosure and discovery.' " *Id.* at 577–78 (quoting *State v. Florence,* 306 Minn. 442, 239 N.W.2d 892 (1976))

 Although there may be a different liberty interest at stake in a bail hearing than at a probable cause hearing—where the ultimate question is whether there is probable cause that the defendant committed the crime—a defendant still has a similar right to due process at the bail hearing. One of the purposes of procedural due process is "to convey to the individual a feeling that the government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests." *Carey v. Piphus,* 435 U.S. 247, 262, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

 Accordingly, we hold that at a bail hearing, a defendant may only call a witness if the defendant makes a persuasive offer of proof that the witness's testimony, when considered in the context of all the other relevant available information, will lead to either release without bail or a reduction in the bail amount to a level that would result in the defendant's release. The determination of whether a defendant has met this test is left to the sound discretion of the district court and will not be reversed absent an abuse of discretion.

 We emphasize, however, as did the Massachusetts Supreme Judicial Court in *Querubin v. Commonwealth,* 440 Mass. 108, 795 N.E.2d 534, 543 (2003), that a defendant does not have the right to call witnesses where the inquiry "involves the presentation of evidence that ... is undisputed, a matter of public record, or readily explained" and also "involves the application of factors ... that are familiar, straightforward, and relatively simple." *Id.* In those cases, "[t]he necessary determination can be adequately presented and decided based on documents (e.g., police reports, witness statements, letters from employers and others, and probation records) and the representations of counsel." *Id.* Due process does not always require a full evidentiary hearing. *Mathews,* 424 U.S. at 348–49, 96 S.Ct. 893. Where the evidence is undisputed and the factors are

straightforward, a "full-blown evidentiary hearing … is not needed or required." *Querubin,* 795 N.E.2d at 544. Defendants may not use pretrial hearings "in the hope of discovering more information[,]" or " 'as a substitute for disclosure and discovery.' " *Id.* at 577–78, 795 N.E.2d 534 (quoting *State v. Florence,* 306 Minn. 442, 239 N.W.2d 892 (1976)). But, "such a hearing, or some variation, may be held in the discretion of the judge when the circumstances of a particular case warrant." *Querubin,* 795 N.E.2d at 543.

### IV.

■■■ Our conclusion that a defendant may call a witness at his bail hearing when he makes a persuasive offer of proof that the witness's testimony, when considered in the context of all the other relevant available information, will lead to the defendant's release, takes us to the next issue raised by LeDoux. This issue is whether the district court erred when it denied LeDoux's request to call witnesses at his bail hearing. We conclude that the question of whether the district court erred is moot and, therefore, we do not address it on the merits.

After LeDoux filed his petition for review, he pleaded guilty and was convicted of all four crimes for which the district court imposed bail. As we have previously stated, bail issues are considered moot after the defendant's conviction. *State v. Arens,* 586 N.W.2d 131, 133 (Minn.1998); *State v. Huber,* 275 Minn. 475, 478, 148 N.W.2d 137, 140 (1967); *State v. Castle,* 260 Minn. 293, 295, 109 N.W.2d 593, 595 (1961). We addressed the due process issue of the right to call witnesses at a bail hearing on its merits because that issue qualified as an exception to the mootness doctrine as it was capable of repetition yet evading review and was functionally justiciable. The issue of whether the court

erred when it denied LeDoux's request to call witnesses does not fit into this exception—it is not capable of repetition. Therefore, we see no basis to reach the merits of this issue.

### V.

The final issue raised by LeDoux in this appeal is the issue of excessive bail. We also conclude that this issue is moot; and, therefore, we see no reason to reach it and will not address it.

Affirmed