NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-987                                            Appeals Court

COMMONWEALTH  vs.  JAMIE B. JOHNSON.

No. 15-P-987.

Suffolk.     May 3, 2016. - April 7, 2017.

Present:  Grainger, Meade, & Wolohojian, JJ.

Global Positioning System Device.  Bail.  Due Process of Law,
     Pretrial detainees.  Practice, Criminal, Motion to
     suppress, Required finding.  Abuse Prevention.  Protective
     Order.  Constitutional Law, Search and seizure.  Search and
     Seizure, Expectation of privacy, Consent.  Consent.

Complaint received and sworn to in the West Roxbury
Division of the Boston Municipal Court Department on November
13, 2013.

A pretrial motion to suppress evidence was heard by Mary
Ann Driscoll, J, and the case was heard by her.

Travis J. Jacobs for the defendant.
Matthew Sears, Assistant District Attorney, for the
Commonwealth.

MEADE, J.  After a jury-waived trial, the defendant was

convicted of breaking and entering a building during the daytime

with the intent to commit a felony, in violation of G. L.

c. 266, § 18, and larceny in an amount more than $250, in violation of G. L. c. 266, § 30.  On appeal, the defendant claims error in the admission of data generated from a global positioning system (GPS) tracking device he agreed to wear as a condition of his release after being charged with violating an abuse prevention order, see G. L. c. 209A, § 7, and that the evidence was insufficient to support his convictions of breaking and entering a building during the daytime with the intent to commit a felony, and of larceny.  We affirm.

1.  Background.  a.  Agreed-to GPS monitoring.  On July 8, 2013, the defendant was charged with having committed various crimes stemming from an incident of domestic violence on Nancy Jones[1] that took place two days earlier in the Dorchester section of Boston (Dorchester case).[2]  At the defendant's arraignment, a judge of the Dorchester Division of the Boston Municipal Court Department (Dorchester judge) determined that, for various reasons,[3] the defendant should not be released on personal

---

[1] A pseudonym.

[2] The charges were violating an abuse prevention order, see G. L. c. 209A, § 7, resisting arrest, see G. L. c. 268, § 32B, malicious destruction of property worth more than $250, see G. L. c. 266, § 127, assault and battery, see G. L. c. 265, § 13A(a), and assault and battery on a police officer, see G. L. c. 265, § 13D.

[3] As reasons, the judge indicated:  (1) the nature and circumstances of the offense charged, (2) the potential penalty the defendant faced, (3) the defendant had a nine-page record,

recognizance without surety, and instead required that he post bail in the amount of $2,500. The Dorchester judge imposed several conditions of pretrial release, which were reflected on a printed form provided to, and signed by, the defendant. The conditions included GPS monitoring, staying away from Jones's home address in Dorchester, and staying away from Jones herself. The defendant signed this form on July 8, 2013, and, by doing so, acknowledged that he had read and understood the conditions, and that he agreed to abide by them. The form was also signed by the Dorchester judge and the chief probation officer. The defendant posted bail and was released the same day.

b. The break-in. On August 31, 2013, two Boston police officers responded to the report of a residential break-in at a home in the West Roxbury section of Boston. The owner, Sarah Dundon, had returned home from a one-week vacation to discover that two jewelry boxes containing approximately $500 worth of jewelry had been stolen from her bedroom. The kitchen window at the rear of the house had been forced open, and the front door, which Dundon had locked when she left, was unlocked. These facts suggested that the thief had entered through the window and left through the door. No further investigation was

_____

and (4) the defendant had several open cases in Quincy, Framingham, Dorchester, and the West Roxbury section of Boston.

conducted at this point, and the police apparently had no leads as to who might have committed the crime.

At some point thereafter, Norfolk County law enforcement officials were conducting a criminal investigation into the defendant. As part of that investigation, they requested that an employee of the probation department review and analyze the data captured by the GPS monitor imposed as a condition of the defendant's pretrial release in the Dorchester case.

On November 6, 2013, one of the Boston police officers who had responded to the break-in received a telephone call from Barbara McDonough of the probation department electronic monitoring program (ELMO).[4] She informed him that while "mapping" the defendant at the request of Norfolk County investigators, she had noticed and mapped the defendant to the home in West Roxbury, at about 4:20 A.M. on August 29, 2013, where the GPS data showed he remained for approximately fifteen to thirty minutes.

Based on this information, the officer concluded there was probable cause to believe the defendant had broken into Dundon's home and stolen her jewelry. Accordingly, on November 13, 2013, by way of a complaint issued out of the West Roxbury Division of the Boston Municipal Court Department, the defendant was charged

_____

[4] ELMO is the unit of the probation department responsible for monitoring and maintaining GPS data.

with breaking and entering a building during the daytime with the intent to commit a felony, and larceny in an amount more than $250.

c. The motion to suppress. The defendant moved to suppress the GPS data that was obtained without a warrant based on his claimed expectation not to be subjected to extended GPS surveillance by the government. In his affidavit in support of his motion to suppress, he averred that as conditions of his pretrial release on his Dorchester case, he was required to stay away from Jones's address, i.e., an exclusion zone, and he was required to wear a GPS device to monitor whether he violated that condition. The defendant claimed that he did not know he would be monitored and tracked everywhere he went, and that he had not agreed to that condition. The defendant's affidavit fails to state that the conditions of release he had signed also required him to stay away from Jones herself.

At a nonevidentiary hearing, the motion judge (who also was the trial judge) considered (1) the pleadings and arguments of the parties; (2) the docket from the Dorchester case, the case for which the defendant was on pretrial release with GPS monitoring; (3) the conditions for bail on the Dorchester case, signed by the Dorchester judge, the defendant, and the chief probation officer; and (4) the representations of the parties that the defendant's data points were first requested by Norfolk

County investigators who were investigating similar crimes; that, in turn, an employee of the probation department contacted the Boston police when she discovered the GPS points in and around Dundon's home; that the Boston police then asked the probation department for the relevant data; and that an employee of the probation department provided the points to the Boston police.

After hearing argument from the parties, the judge denied the motion. Although she did not conduct an evidentiary hearing, she made the findings covering the material facts set out above, and those findings are uncontroverted. In part, the judge stated as follows:

> "Counsel has filed a motion to suppress GPS data evidence obtained, as he said, without a warrant. I don't think there's any question that that evidence was obtained without a warrant, and the question before me today is not whether the motion to suppress should be allowed or denied, but whether [the defendant] has any expectation of privacy in the tracking of his movements by the GPS monitor. . . .

> "In this case, the defendant was -- and you can look at it in one of two ways or even, perhaps, both ways; you can look at it as an order of the court that he was ordered to be subject to GPS monitoring as a condition of his release from custody, or you can look at it that he agreed to be subject to GPS monitoring as a condition of his release from custody.

> "And either way, I find that he has no expectation of privacy in his movements, because his movements are subject to GPS monitoring. He knows the device is on him. He knows what the device does; namely, monitor his movements. I don't think that you need to have a degree in electronic engineering to know that, nor do you need the testimony of someone from ELMO to tell us that. I think any reasonable

person would understand that one's movements are subject to monitoring once you place the GPS -- once the GPS is placed on your person.

"And while it may be true that he was ordered to stay away from a particular location, [Jones's address], it's also true that he was ordered to stay away from [Jones]. And that order, I would take it, would be no matter where [Jones] was.

"So that while the defendant would have to understand that his movements were being monitored, and even if you read the specific stay-away narrowly, it's clear that not only is he ordered to stay away from [Jones's address], but he's also ordered to stay away from [Jones], who could be anywhere.

"So, given the fact that [the defendant] was either ordered to subject himself to GPS monitoring or agreed to subject himself to GPS monitoring, and given the fact that any reasonable person would understand that such a device does track your movements and that it's a condition of his release from custody, that he has, then, no reasonable expectation of privacy in his movements, as he knows that they are, in fact, being monitored."

On these bases, the judge found that the defendant was not entitled to an evidentiary hearing and denied the motion to suppress.

d. The motion in limine. At the start of the trial, the defendant moved in limine to exclude evidence of the "Electronic Monitoring Screen Printouts." Specifically, he moved to exclude computer screen shots that depicted the geographic location of the GPS device he wore, and data points that placed him in and around Dundon's home in the early morning hours of August 29, 2013. As grounds therefor, the defendant claimed the evidence was "misleading and confusing." After hearing argument, the

judge denied the motion and admitted the evidence de bene, subject to any later motion to strike. Although the defendant did not later move to strike the evidence, he did renew his objection to the evidence as being confusing.

e. _The trial_. During the summer of 2013, Dundon lived in a single-family home in West Roxbury. Dundon lived alone in the two-story, Cape Cod-style house, located in a quiet and friendly residential neighborhood.

From August 25 through 31, 2013, Dundon was on vacation in Georgia and South Carolina. Her house had no alarm system, and no one stayed there while she was away. Only her parents had a set of keys to the home, and they lived in Dedham.

As a condition of the defendant's pretrial release regarding the Dorchester case, he agreed to wear a GPS "bracelet" monitored by ELMO, and he signed a condition of release form and a GPS liability and acceptance form. A GPS bracelet is a monitor attached to a person's ankle that emits location signals. The defendant was fitted for his GPS device, it was tested, and it proved to be operational.

The ELMO system permits both tracking of a GPS device's geographic position in real time and it may retrieve historic data points. The system records the location of a GPS device every minute by sending a signal via satellite. Also, because it can retrieve historical data, the ELMO system is able to

produce maps of specific times and dates that include minute-by-minute position points for any particular GPS device.

Because the transmission of data is satellite-based, in general, the data points are accurate ninety percent of the time, within a thirty-foot radius of the transmitted point. Historically, the ELMO system has had no problems tracking GPS devices in West Roxbury, which tends to be a "[v]ery accurate" area, i.e., one of the better areas of "the city" to track GPS data. Data points are transmitted and received by the ELMO system regardless of whether the device is inside or outside of a building.

On August 29, 2013, between 3:40 and 5:38 A.M., the defendant's GPS device transmitted data location points that showed him to have been in and around Dundon's house for a period between fifteen to thirty minutes. Dundon identified her house as the location to which the defendant had been tracked that morning while she was away on vacation. Dundon did not know the defendant, and she had never invited or allowed him into her house. There was no evidence that the defendant's GPS device had been tampered with or removed.[5]

---

[5] If a GPS device is tampered with or improperly removed, an alert is sent to the ELMO office and the violation appears on an employee's computer screen.

When Dundon returned home from vacation on August 31, 2013, she had trouble with the lock on the front door; it was not working properly.  When she got inside, she immediately realized that her house had been burglarized.  Her kitchen window and screen were wide open, and she discovered various items had fallen, were broken, or were out of place.  When she went upstairs in her home, she noticed that two jewelry boxes usually located on a bureau in her bedroom were missing, along with a pillowcase.  Her jewelry boxes had contained various silver and gold jewelry, a watch, necklaces, bracelets, earrings, and rings, having a total value in excess of $250.[6]

2.  Discussion.  a.  The GPS evidence.  The opening sentence of art. 14 of the Massachusetts Declaration of Rights states:  "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."  When analyzing the rights secured by art. 14, the "ultimate touchstone" for evaluating any infringement of those protections is to ask whether the governmental conduct at issue was reasonable.  Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012), cert. denied, 133 S. Ct. 945 (2013), quoting from Commonwealth v. Townsend, 453 Mass. 413, 425 (2009).  Here, the defendant claims that the judge

---

[6] At the conclusion of the evidence, the defendant's renewed motion to suppress the GPS data was denied.

erred in admitting the GPS data because the "search" conducted by the police was unreasonable in light of his expectation of privacy in that data.[7] We disagree for several reasons.

The first matter to resolve is whether the collection and the analysis of GPS data, as occurred here, is a search in the constitutional sense.[8] In some circumstances, but not those presented here, the answer is "yes." Both the United States Supreme Court and our Supreme Judicial Court have concluded that the surreptitious installation of a GPS device on a motor vehicle is a "search," United States v. Jones, 565 U.S. 400, 404

---

[7] The dissent frames the issue as whether the judge erred in denying the motion to suppress. Post at         . Although different from how the defendant stated the issue in his brief, the difference is without moment. To the extent the defendant and the dissent improperly rely on the trial record to argue the judge erred in denying the motion to suppress, see Commonwealth v. Deramo, 436 Mass. 40, 43 (2002), it is sufficient to say the trial record does not advance the defendant's cause.

[8] To the extent the dissent questions the underlying lawfulness of the agreed-to pretrial release order, the Supreme Judicial Court has held that, even absent statutory authorization, a judge retains the discretion to impose "GPS monitoring as a condition of pretrial probation." Emelio E. v. Commonwealth, 453 Mass. 1024, 1025 (2009). Also, G. L. c. 276, § 87, "enables a judge, with the defendant's consent, to place the defendant on pretrial probation and then to set conditions, again with his consent, for release on personal recognizance or bail." Jake J. v. Commonwealth, 433 Mass. 70, 71 (2000). Finally, as of 2014, "[a]ny person authorized to take bail for [a violation of a G. L. c. 209A order] may impose conditions on a person's release in order to ensure the appearance of the person before the court and the safety of the alleged victim [or] any other individual or the community." G. L. c. 276, § 58, second par., inserted by St. 2014, c. 260, § 32.

(2012), or a "seizure."  Commonwealth v. Connolly, 454 Mass.

808, 818 (2009).  See Commonwealth v. Rousseau, 465 Mass. 372,

382 (2013).  The United States Supreme Court has recently held,

in a case sorting out the Fourth Amendment intricacies of

mandatory monitoring of recidivist sex offenders, that "a State

also conducts a search when it attaches a device to a person's

body, without consent, for the purpose of tracking that

individual's movements" (emphasis supplied).  Grady v. North

Carolina, 135 S. Ct. 1368, 1370 (2015).  These are the cases

upon which the defendant has staked his claim, and upon which

the dissent relies.  However, these cases are inapposite to the

instant defendant's circumstances.  The key distinction being

that in all of the mentioned cases, the defendant did not

consent to being tracked by a GPS device.[9]  Rather, in those

cases, it was either a statutory requirement of his release or

was done without his knowledge.  Thus, those cases shed no light

here.

To determine whether a search in the constitutional sense

has taken place, the defendant must establish that he has an

expectation of privacy in the data transmitted by his GPS device

and stored in the ELMO system.  See Grasso & McEvoy, Suppression

_____

[9] In the opening sentence of the discussion section of the
dissent, post at        , our colleague omits the Grady caveat
to its holding, i.e., that the use of a GPS device is a search
when it is done without the defendant's consent.

Matters Under Massachusetts Law § 3-5[b] (2016). See also Commonwealth v. Carter, 424 Mass. 409, 411-412 (1997) (under art. 14, defendant has burden of establishing that search in constitutional sense took place). This inquiry has both a subjective and an objective component. See ibid. In other words, "[t]he measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). See Commonwealth v. Bly, 448 Mass. 473, 490 (2007).

First, we must evaluate whether this defendant, by his conduct, manifested a subjective expectation of privacy in the data emitted from the GPS device and stored in the ELMO system. See Commonwealth v. Montanez, supra. That is, whether this defendant has shown that he has made an effort to preserve the evidence in question as private. See Katz v. United States, 389 U.S. 347, 351-352 (1967); Smith v. Maryland, 442 U.S. 735, 740 (1979). The defendant has not carried this burden.

Unlike the tracking of a cellular telephone's emission of location data unbeknownst to its owner, see Commonwealth v. Augustine, 467 Mass. 230, 252-255 (2014), S.C., 472 Mass. 448 (2015), the defendant's GPS device did not belong to him and he was wearing it for the express purpose of tracking his

location.[10]  Indeed, as a condition to his consented-to pretrial

release, the defendant agreed to wear the device at all times

and to permit continuous supervision of his whereabouts by the

probation department's monitoring of the device and its

transmissions.  On the pretrial release order itself, which the

defendant signed, he agreed to be supervised by the probation

department, and to observe all of the conditions of that

probation, including the GPS monitoring of an order to stay away

from Jones, the named 209A victim in the case, a condition

without geographic limitations.  See G. L. c. 276, § 87; Jake J.

v. Commonwealth, 433 Mass. 70, 70-71 (2000).

As conditions of his pretrial release, the defendant was

ordered to stay away from Jones's home, and Jones herself.

Nowhere in the defendant's motion to suppress, or in the

affidavit in support thereof, did he acknowledge the condition

that he was to stay away from Jones, a condition that the judge

---

[10] The dissent's reliance on Commonwealth v. Augustine, 467 Mass. at 245, to reject the Commonwealth's claim that the defendant could have no expectation of privacy in the GPS data because it was in the hands of a third party, is misplaced. Post at     . Unlike the surreptitious tracking of Augustine's cell site location information, the instant defendant agreed to wear the GPS device to permit his location to be tracked. Moreover, the dissent's conclusion that the probation department is not a third party in these circumstances is puzzling. Post at     .

found decisive,[11] and a fact that undermines his claim that his consent was restricted to a particular location.[12]  To the extent the defendant claimed his understanding of the parameters of the pretrial release order was limited to him staying away from Jones's home, the judge was not required to credit that averment, especially where the agreement the defendant signed contradicted that claim.  Moreover, nowhere in his affidavit in support of his motion to suppress does he even state that he believed his GPS data would remain private.  Rather, by agreeing to the terms of his release, i.e., an agreement to provide the probation department with his constant and continuous location, the defendant made no effort to keep private the GPS data.  Rather, he expressly and intentionally signed it away and, thus, he failed to manifest a subjective expectation of privacy in that information.  See Commonwealth v. Bly, 448 Mass. at 490.

Second, even if the defendant harbored a subjective expectation of privacy in the GPS data, we nonetheless conclude that society would not be "willing to recognize that expectation as reasonable."  Commonwealth v. Montanez, 410 Mass. at 301.  In

---

[11] On four occasions in her decision denying the motion to suppress, the judge stressed the condition that the defendant stay away from Jones.

[12] Contrary to the suggestion in the dissent, post at      , the lack of a geographic restriction on where the defendant would be monitored was not limited to places where Jones had some connection.

reaching this conclusion, the following factors are relevant to the analysis:  "(1) the character of the location; (2) the nature of the place involved (did the defendant own, have a possessory interest in, or control access to); (3) does the defendant have a possessory interest in the item seized; (4) has the defendant taken normal precautions to protect his privacy; and (5) the nature of the intrusion."  Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 3-5[c] (2016).  See Commonwealth v. Pina, 406 Mass. 540, 545 (1990).  Here, the data emitted from the GPS device is stored in the ELMO system, which is not a place the defendant controls or possesses, or to which he has access.  He neither has a possessory interest in the data, nor has he endeavored to protect any privacy interest in it given his agreement to wear the device that was designed to provide his location data to the probation department.  See Commonwealth v. D'Onofrio, 396 Mass. 711, 714-715 (1986); Commonwealth v. Pina, supra at 544-545; Commonwealth v. Montanez, supra at 301-303.  Finally, the nature of the intrusion is one he voluntarily chose in order to enjoy the liberty provided by his pretrial release.[13]  Cf. Commonwealth v.

---

[13] At the same time, there is nothing in the record that indicates that the defendant was compelled to either accept GPS monitoring or be held without bail.  Nor, as the dissent suggests, was GPS monitoring a "punitive restraint on his liberty," as it provided him release from the confines of jail. Post at      .  In addition, the defendant made no claim in

<u>Morrison</u>, 429 Mass. 511, 514 (1999) ("It is simply nonsense to say that society is prepared to recognize [a defendant's] right to be where [an abuse prevention order] has ordered him not to be").

This case presents a defendant, who the record fails to reflect is a person who possesses anything less than ordinary intelligence or who otherwise suffers from any intellectual deficits, who agreed to wear a GPS tracking device, and later claimed he did not understand that the tracking device was going to actually track him. It would indeed be a strange society, and one challenged by common sense, that would be "willing to recognize" the defendant's understanding "as reasonable." <u>Commonwealth</u> v. <u>Montanez</u>, <u>supra</u> at 301.[14]

_____

his motion to suppress or in his affidavit in support thereof, that his consent to wearing the GPS device was invalid due to "coercion, duress, or improper inducements." <u>Commonwealth</u> v. <u>Berrios</u>, 447 Mass. 701, 708 (2006).

[14] In addition, the dissent finds fault in the judge's ruling based on an issue that the defendant raised neither in his motion to suppress nor on appeal before us, i.e., that GPS monitoring is an unconstitutional or excessive condition of his pretrial release. <u>Post</u> at      . See <u>Commonwealth</u> v. <u>Silva</u>, 440 Mass. 772, 781-782 (2004); <u>Commonwealth</u> v. <u>Mathis</u>, 76 Mass. App. Ct. 366, 374-375 (2010). See also Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004) ("Grounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived"); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975) (claims not raised in briefs are waived). Thus, contrary to the dissent's discussion of the matter, <u>post</u> at      , the claim was not before the judge and, correspondingly, not before us. See <u>Budish</u> v. <u>Daniel</u>, 417 Mass. 574, 577 n.5 (1994). See also <u>Commonwealth</u> v. <u>Obi</u>, 475 Mass.

Furthermore, once the defendant consented to the pretrial release condition of the GPS monitoring, it is not reasonable to conclude that he could control or limit how that GPS data would be used, including for a law enforcement purpose.  See United States v. Jacobsen, 466 U.S. 109, 117 (1984) ("It is well settled that when an individual reveals private information to

541, 549 (2016) (where defendant's claim that condition of probation was unconstitutional intrusion on right to free exercise of religion was not raised in trial court, but instead raised for first time on appeal, claim waived).  Even though this case is even further procedurally removed from Obi, i.e., the claim has not been raised at all, there is also no merit to it.  The defendant does not have a constitutional right to be released on bail prior to trial.  Querubin v. Commonwealth, 440 Mass. 108, 112 (2003).  See United States v. Salerno, 481 U.S. 739, 748-751 (1987).  Even though a defendant has no right to bail, in general, bail cannot be set with excessive conditions that infringe on constitutionally protected interests without a sufficient countervailing governmental interest.  See United States v. Salerno, supra at 754.  See also Perry v. Sindermann, 408 U.S. 593, 597 (1972).  Here, the defendant, an arrestee in a domestic violence case with a significant criminal record, consented to being tracked by a GPS device as a means designed to keep the 209A victim safe in her home and person.  As we have stated, keeping away from Jones herself was an agreement without geographic limitation.  Agreed-upon GPS tracking to protect a victim's safety as well as the community's safety are proper, sufficient, and significant governmental interests that outweigh any unreasonable, albeit theoretical, expectation of privacy.  See G. L. c. 276, § 58, second par., inserted by St. 2014, c. 260, § 32 ("Any person authorized to take bail for [a violation of a G. L. c. 209A restraining order] may impose conditions on a person's release in order to ensure the appearance of the person before the court and the safety of the alleged victim, any other individual or the community").  At the very least, in light of the legislative goals of protecting domestic violence victims and our communities as a whole, the defendant has not even attempted to carry his burden of showing that agreed-upon GPS tracking was excessive either generally or in the particular circumstances of his case.

another, he assumes the risk that his confidant will reveal that information" to third party even if "information is revealed on the assumption that it will be used only for a limited purpose"). Without an expectation of privacy in the location data, the defendant cannot control with whom it is shared. Indeed, G. L. c. 276, § 90, permits the police to inspect probation records at any time, and G. L. c. 276, § 100, as appearing in St. 1966, c. 623, permits probation records to be shared with the "police commissioner for the city of Boston," and "to all chiefs of police," among others. In other contexts, the same is true for sharing information for law enforcement purposes. See Matter of a Grand Jury Subpoena, 454 Mass. 685, 689 n.6 (2009) (pretrial detainee had no reasonable expectation that recorded telephone calls would not be shared with law enforcement). There was no impropriety in sharing the GPS location data with the police, and what occurred here was entirely reasonable.

Because the defendant's motion and affidavit failed to present facts to establish that the use of the GPS location data constituted a search in the constitutional sense, the judge properly denied the motion without an evidentiary hearing, see Commonwealth v. Rodriguez, 456 Mass. 578, 588 (2010), and the evidence was properly admitted at trial. As such, and contrary to the view of the dissent, post at          , there is no need to

remand this case to ascertain whether probable cause existed to justify a search that did not occur.

b. _Sufficiency of the evidence_. The defendant also claims that there was insufficient evidence to support his conviction of breaking and entering a building during the daytime with the intent to commit a felony, and because of that deficiency, the Commonwealth failed to offer sufficient evidence to support his related conviction of larceny. More specifically, the defendant claims the evidence that he entered the Dundon's home was speculative and unreliable. We disagree.

When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether _it_ believes that the evidence at the trial established guilt beyond a reasonable doubt." _Commonwealth_ v. _Velasquez_, 48 Mass. App. Ct. 147, 152 (1999), quoting from _Jackson_ v. _Virginia_, 443 U.S. 307, 318-319 (1979). See _Commonwealth_ v. _Bell_, 83 Mass. App. Ct. 82, 83 (2013). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." _Commonwealth_ v. _Latimore_, 378 Mass. 671, 677 (1979), quoting from _Jackson_ v. _Virginia_, _supra_.

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the

offense. See Commonwealth v. Latimore, supra at 677-678. To prove the crime of breaking and entering a building during the daytime with the intent to commit a felony, in violation of G. L. c. 266, § 18, the Commonwealth must prove beyond a reasonable doubt that the defendant broke into the building of another during the daytime, entered the building, and did so with the intent to commit a felony therein. Commonwealth v. Burton, 82 Mass. App. Ct. 912, 912-913 (2012).

The element of "breaking" is broadly defined and encompasses all actions violating the common security of a dwelling, including the lifting of a latch and opening a door, opening of a window, and moving "to a material degree something that barred the way." Commonwealth v. Tilley, 355 Mass. 507, 508 (1969). "Entering," as it was understood at common law, includes "any intrusion into a protected enclosure by any part of a defendant's body." Commonwealth v. Burke, 392 Mass. 688, 690 (1984). See Commonwealth v. Cotto, 52 Mass. App. Ct. 225, 228 (2001); Commonwealth v. Smith, 75 Mass. App. Ct. 196, 200 (2009), S.C., 458 Mass. 1012 (2010).

Here, Dundon was on vacation from August 25 to August 31, 2013. All of her windows were closed and locked. When she returned, she found the front door lock was not working correctly, and saw evidence of a break-in, specifically the metal garden hose holder outside of the kitchen window, directly

under the window, was pulled out, the window and the screen above the sink were open, and the knickknacks that once sat on the window sill were knocked into the sink and onto the floor. She also discovered that her jewelry boxes were gone, along with a pillowcase. The value of the missing items exceeded $250. See Commonwealth v. Burton, supra.

The defendant's GPS data location points revealed that he was in and around Dundon's home for a period of thirty minutes in the early morning hours of August 29, 2013, while she was away on vacation. The defendant was unknown to Dundon, he did not have permission to be inside her home, and there was no evidence that his GPS device had been tampered with or removed. Nonetheless, the defendant claims that because there was but one single data point inside Dundon's house, and the margin of error in the GPS data (ninety percent of the time the data is accurate within a thirty-foot radius), the evidence is too speculative and unreliable to support his conviction. "However, to indulge this argument, we would have to view the evidence in the light least favorable to the Commonwealth, which, of course, we cannot do." Commonwealth v. Arias, 78 Mass. App. Ct. 429, 435 (2010). See Commonwealth v. James, 30 Mass. App. Ct. 490, 491 n.2 (1991). In any event, there was also evidence that GPS devices in West Roxbury tended to be "[v]ery accurate," as it was one of the better areas of "the city" to successfully conduct such

tracking.  Thus, there was ample evidence and reasonable inferences drawn therefrom, that supported the judge's conclusion that the defendant broke and entered Dundon's home and stole items valued in excess of $250.  See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("[I]nferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").

Judgments affirmed.

GRAINGER, J., concurring.  While I regard the view expressed by our dissenting colleague that the case should be remanded for an evidentiary hearing as a sensible approach, I do not consider the failure to hold an evidentiary hearing to be error under existing case law.  Accordingly, I concur in the result.

This case presents the intersection of evolving concepts related to electronic privacy with established principles applicable generally to motions to suppress.  I write separately because I consider our task unnecessarily complicated by current jurisprudence[1] that is outdated in its reliance on theories of trespass and property rights.

Search and seizure.  The distinction between a seizure and a search, historically a linchpin in measuring the level of permissible government incursion, is losing practical application.[2]  The distinction has been based on the different levels of intrusiveness traditionally associated with a physical detention (a stop or a seizure) on the one hand and an exploration of a person's body, clothing, or the interior of a

---

[1] The issues raised here invoke both art. 14 of the Massachusetts Declaration of Rights and corresponding Federal Constitutional privacy rights under the Fourth Amendment.

[2] Perhaps sensing the problem, in United States v. Jones, 565 U.S. 400, 404 (2012), the United States Supreme Court defined the global positioning system monitoring of the defendant's vehicle simply as a search.

vehicle (a search or a patfrisk), on the other. Terry v. Ohio, 392 U.S. 1, 16-17 (1968). We endeavor with increasing futility to apply these points of reference in the context of electronic signals from orbiting satellites used to triangulate a geographic position.

In the present case existing law deems the attachment of the monitoring device a seizure, while the review of previously collected data is considered a search. Grady v. North Carolina, 135 S. Ct. 1368, 1370-1371 (2015). See Commonwealth v. Connolly, 454 Mass. 808, 822 (2009) (installation of global positioning system [GPS] "device clearly constituted a seizure under art. 14"); Commonwealth v. Augustine, 467 Mass. 230, 255 (2014), S.C., 472 Mass. 448 (2015) (compelled production of cell site location information [CSLI] constituted "search").

Thus, our analysis under existing cases proceeds on the basis that any consent obtained from this defendant was limited to attaching the device to his ankle (the seizure), and to the use of the data to determine his location at or close to the time of transmission (the search), but might not necessarily encompass the later examination of the previously collected data (the extended search). Id. at 254 (governmental tracking of two weeks' historical CSLI data falls outside brief time period during which individual has no reasonable privacy interest).

This approach equates physical and digital searches -- but they are not alike. Unlike the contents of a shirt pocket or an automobile that may have been hidden or removed before a search, and that can be jettisoned later if they remain undetected during a search, the data obtained by GPS monitoring remains on file and cannot be discarded by a suspect acting unilaterally. Consent to wear a GPS monitoring device, thus, is not comparable to an individual's willingness to be detained by a police officer or to a suspect's consent to submit to a physical search, both of which are limited to one point in time. For this reason the legal consequence of the defendant's consent to be monitored by a GPS device should be analyzed only in the context of his reasonable expectation of ongoing privacy.[3]

Reasonable expectation of privacy. The defendant's affidavit asserts that he did not know that the GPS device would monitor all his locations. Although the judge did not conduct an evidentiary hearing, she explicitly discredited this assertion: "[A]ny reasonable person would understand that such a device does track your movements and that it's a condition of his release from custody, that he has, then, no reasonable

---

[3] And, for this reason, I do not perceive utility in those portions of the majority opinion that attempt to analyze whether use of GPS data "is a search in the constitutional sense." Ante at      .

expectation of privacy in his movements, as he knows that they are, in fact, being monitored."

The judge's observation is sensible commentary reflecting what has become everyday common knowledge. Nonetheless, our continuing adherence to physical notions of surveillance of individuals and search of property is at odds with her statement. While few recent cases rely exclusively on property-based approaches to privacy expectations, they uniformly attempt a hybrid approach that only emphasizes the incongruity.

The case of United States v. Jones, 565 U.S. 400 (2012), is emblematic. The majority (Scalia, J.) adhered to an eighteenth century property analysis with unsurprising intransigence.[4] Id. at 404-408. But even the concurring Justices, while disavowing a physical trespass theory,[5] referred to "longer term GPS monitoring" (undefined as to specific length of time) as violative of a reasonable privacy expectation stemming from the "unique attributes of GPS surveillance." Jones, supra at 415 (Sotomayor, J., concurring). The Supreme Judicial Court has specified that these unique attributes result in a violation of

---

[4] "[W]e must assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." Jones, supra at 406 (quotation omitted).

[5] In fact, the Court had already held that a Fourth Amendment violation did not require a trespass. Katz v. United States, 389 U.S. 347, 353 (1967).

art. 14 of the Massachusetts Declaration of Rights because GPS monitoring allows police to record "a person's public movements at a cost far below conventional techniques" (emphasis supplied). Commonwealth v. Rousseau, 465 Mass. 372, 381 (2013). The evident problem with this standard is the rapidly disappearing notion that conventional techniques are limited to physical surveillance and, therefore, continue likewise to limit reasonable expectations.

Our own cases have followed suit. "There is no real question that the government, without securing a warrant, may use electronic devices to monitor an individual's movements in public to the extent that the same result could be achieved through visual surveillance." Commonwealth v. Augustine, 467 Mass. at 252, citing United States v. Knotts, 460 U.S. 276, 282, 285 (1983). In Commonwealth v. Connolly, 454 Mass. at 835, the concurrence advocated a privacy rather than a property approach to GPS monitoring,[6] but nonetheless defined the defendant's reasonable privacy expectation as a belief that his "comings and goings will not be continuously monitored except through physical surveillance, which requires a far greater investment

---

[6] "Our constitutional analysis should focus on the privacy interest at risk from contemporaneous GPS monitoring, not simply the property interest." Commonwealth v. Connolly, supra at 836 (Gants, J., concurring).

of police resources and generates far less information than GPS monitoring."  (Gants, J., concurring).

If there ever were a time when a suspect had a reasonable expectation that the police would not avail themselves of widely available and well-known technology providing significantly greater investigative efficiency at a far lower cost, that time is well past.  It is certainly past with respect to GPS monitoring.[7]

The analogy to physical surveillance is particularly wide of the mark in this particular case.  The defendant's argument concedes that his presence in the West Roxbury house at around 4:00 A.M. on the night of the crime legitimately could have been ascertained if the police had decided to use the GPS system to effect a random check of his compliance with the bail conditions at that time.  The corresponding likelihood that they would decide to do so by physical surveillance, i.e., by sending an officer out in the middle of the night to conduct a random search for the defendant, is a far less reasonable expectation, bordering on absurd.[8]

---

[7] Indeed, it appears more than probable that technological advances in the form of remote access surveillance will continue to discredit any property-based analysis.

[8] As electronic ability to monitor individuals increases, reasonable expectations of privacy decrease.  This case, involving a consensual agreement to be monitored by a GPS device rather than, for example, surreptitious cellular telephone

While the scope of any court order, consensual or otherwise, might explicitly be time-restricted or might be otherwise restricted as a matter of law related to its underlying purpose,[9] GPS monitoring itself, however labeled, contains no such inherent restriction.

Reasonable expectations depend on specific circumstances.[10] As a rule the context, communications, and purposes related to the defendant's consent are sufficiently determinative of important rights under art. 14 to warrant an evidentiary hearing.[11]  If the defendant asserts he was led reasonably to

---

tracking, does not implicate the more troubling aspects of this self-perpetuating attribute of technology.

[9] I consider analogies to case law involving prearrest investigative searches or postconviction parole and probation monitoring to have limited application to these circumstances. Again, as a general matter, these do not involve consent.

[10] The dissent asserts the invalidity of any consent to an unconstitutional condition that is imposed as a provision of pretrial release. Post at        .  I believe the reverse is more accurate:  the validity of the consent, based on reasonable expectations, should be our first inquiry, as this is what determines constitutionality in the first place.  Moreover, it has long been recognized that the decision to invoke or waive constitutional rights may involve serious competing disadvantages.  See Commonwealth v. Means, 454 Mass. 81, 90 (2009); Commonwealth v. Beauchamp, 49 Mass. App. Ct. 591, 606-608 (2000).

[11] The majority correctly observes that the defendant bears the burden of establishing a reasonable expectation of privacy. Ante at        .  That does not necessarily lead to the conclusion in a case of first impression that it would be inappropriate for him to have the opportunity to do so at an evidentiary hearing.

expect that his monitoring would be restricted in some fashion, he has a legal right to present evidence on that point.  But that right is conditioned on a proffer of facts "that, if true, would establish (1) that evidence was obtained through a search or seizure for which the Commonwealth must prove probable cause, reasonable suspicion, or consent to search; and (2) that the defendant has standing to challenge the constitutionality of the search or seizure."  Commonwealth v. Mubdi, 456 Mass. 385, 389 (2010).  Additionally, the defendant is required to provide sufficient detail in the affidavit required under Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004), "so that the prosecution may determine which witnesses it should call and what evidence it should offer to meet its burden of proving probable cause, reasonable suspicion, or consent."  Mubdi, supra, citing Costa v. Commonwealth, 440 Mass. 1003, 1004 (2003).

The defendant's affidavit is conclusory in nature.  It asserts only his own limited familiarity with GPS capability and his expectations of the limited use to which GPS data would be applied.  He proffers neither communications with other individuals, nor other facts or circumstances on which a claim that those expectations are objectively reasonable can be based.

Finally, I note that the specific issue raised here can be averted in future cases with a colloquy at the bail hearing and

detailed written notice, each explaining the scope of monitoring that will be performed.

WOLOHOJIAN, J., dissenting.  I agree with the concurrence that our cases draw a distinction under art. 14 between the seizure that occurs when a GPS device is attached (whether to a person or an object) and the search that occurs by that device's collection of data.  Ante at         .  But regardless of whether the initial physical intrusion constitutes a seizure or a search, the government's collection of long-term historical locational data is a search in which a person has an established privacy interest recognized under both the Fourth Amendment and art. 14.  There is no case -- Federal or State -- that concludes, as does the majority, that a person's consent to wear or to carry a location-tracking device such as a GPS monitor or a cell phone as a matter of law destroys his or her expectation of privacy in the historical locational data collected by the device.  Ante at         .  Indeed, our art. 14 jurisprudence concludes to the contrary.  Consent to a physical seizure is not ipso facto consent to a subsequent search, nor does consent to a seizure entirely and necessarily destroy a person's privacy interests in his whereabouts.

For these reasons, like the concurrence, I disagree with the majority view that the defendant's consent to wear a GPS device as a condition of pretrial release in and of itself destroyed, as a matter of law, any subjective or objective expectation of privacy in the data collected by the device

without regard to any other circumstance, including the duration and scope of the search.  Ante at      .  In my view, the defendant's consent to GPS monitoring as a condition of pretrial release did not extend beyond the judge's authority to impose GPS monitoring as a reasonable pretrial condition as authorized by the Legislature.  Therefore, although the defendant's consent operated to reduce his expectation of privacy in the GPS data to the extent they would be searched to ensure compliance with the stay-away conditions of his pretrial release, it did not operate to eliminate his expectation of privacy in the long-term historical GPS data unrelated to those conditions.  Because the defendant retained both a subjective and an objective expectation of privacy in any search of the data that was not tied to the pretrial conditions for which GPS monitoring was permissibly imposed, and because the Commonwealth made no showing that the defendant consented to any search of the GPS data beyond those purposes, I respectfully dissent.  In my view, the motion to suppress should not have been denied without an evidentiary hearing to determine whether there was probable cause for the search of the historical GPS data; accordingly, I would vacate the judgments and remand for such an evidentiary hearing.[1]

---

[1] I do not disagree with the majority that, taking the GPS data into account, the evidence was sufficient to support the

I begin by drawing out some important factual and procedural information from the record.  The defendant's arraignment in the Dorchester Division of the Boston Municipal Court Department on domestic violence charges occurred on July 8, 2013, when GPS monitoring was imposed as a condition of his pretrial release.  The record is silent as to what -- if anything -- the defendant was told about the GPS monitoring before he consented to it.  More specifically, there is nothing to show or suggest that the defendant was told that the GPS device would collect minute-by-minute data about his location wherever he might be, including in his own home.  Nor is there any evidence that the defendant was told that the historical data collected by the GPS device could or would be used for law enforcement purposes, including the prosecution or investigation of other, unrelated, crimes.  Nor was he informed how long the data would be retained.

Instead, the evidence shows only that the defendant received and signed a court form containing the following language:

> "TO THE ABOVE NAMED DEFENDANT:  You are hereby given the following conditions of release by this court. . . .

> "[X] GPS MONITORING (If condition is so ordered defendant may NOT LEAVE THE STATE).

---

convictions.  <u>Ante</u> at         .

"[ ] STAY AWAY/NO CONTACT WITH THE FOLLOWING PERSONS

"[left blank]

"[X] STAY AWAY FROM THE FOLLOWING AREAS/LOCATIONS (indicate addresses of above named individuals if applicable -- all addresses will have a 600ft radius unless otherwise ordered):

"[Nancy Jones's[2] home in the Dorchester section of Boston]

"& [Nancy Jones]."

For reasons that are unexplained, Jones was not written in the section of the form requiring that the defendant stay away from particular persons.  Yet the parties appear to accept, as do I, that Jones is a person and not a place.  The parties also appear to accept, as do I, that the address listed in Dorchester is her address.  This reading of the form is certainly logical; after all, the form requires that the address of any person from whom the defendant is to stay away be disclosed.  The form was witnessed and countersigned by the chief probation officer, Dierdre Kennedy.

That same day, the defendant and Kennedy both signed a probation department electronic monitoring form entitled, "GPS EQUIPMENT LIABILITY ACCEPTANCE FORM."[3]  This document likewise

---

[2] A pseudonym.

[3] The document bears the letterhead "THE COMMONWEALTH OF MASSACHUSETTS, THE TRIAL COURT, OFFICE OF THE COMMISSIONER OF PROBATION, ELECTRONIC MONITORING PROGRAM, 119 Chestnut Street, Clinton, MA  01510, Phone #:  978-365-2970, email: elmoclinton@jud.state.ma.us."

made no mention of the extent, duration, scope, or use of the data that would be collected by the GPS device. Nor did it inform the defendant that the data could or would be searched for law enforcement purposes. Instead, the document was limited to informing the defendant of his financial responsibility for any physical damage to, or loss of, the GPS equipment.

The defendant's affidavit in support of his motion to suppress averred that he "was not told that the GPS device would monitor and keep track of all the places [he] went to while [he] was wearing the device." Not only is this statement uncontradicted, it is consistent with the contemporaneous court and probation records. None of the documents pertaining to the defendant's GPS monitoring state that the defendant would be monitored constantly, nor do they say anything about the purposes for which the GPS data would be collected, maintained, or used.

Two months after the defendant's arraignment, Sarah Dundon's home in West Roxbury was broken into. Apart from their investigation at the scene on the day it was reported, the police did not further pursue the matter, had no leads, and the case went quiet. There is nothing to suggest that the police suspected the defendant had anything to do with the break-in at

that time.  There is also evidently no connection between Jones and Dundon's home.

At some point later, potentially as late as the beginning of November, police from Norfolk County conducting a different criminal investigation requested that the probation department review and analyze several months of historical locational data captured by the defendant's GPS device.  We have no information about the nature of that investigation, but there is nothing to suggest that it related to the locational conditions of the defendant's pretrial release.  Specifically, there is no reason to think that the investigation related to Jones or her home.

As a result of the request from Norfolk County, Barbara McDonough, an employee of the probation department electronic monitoring program (ELMO),[4] searched at least two months[5] of minute-by-minute historical locational data captured by the defendant's GPS device.  Notably, the data did not show that the defendant had violated any of the locational (i.e., stay-away)

---

[4] This is the same office that created, and entered into, the GPS equipment monitoring liability acceptance form the defendant (and the chief probation officer) signed when he was arraigned.

[5] McDonough's testimony suggests that a longer period was examined, but the record does not reveal exactly how long the defendant remained on the GPS monitoring system.  In any event, she investigated the defendant's minute-by-minute movements for the period July 8, 2013 (when he went onto the GPS system) until at least August 29, 2013 (when the break-in was committed).

restrictions of his pretrial release, and he is not accused of having done so. However, McDonough noticed that the data placed the defendant at a location in West Roxbury in the early hours of the morning. Although she did not know the significance, if any, of this information, she forwarded it to the West Roxbury police in case it might prove useful. And so it proved, because it connected the defendant to the break-in at Dundon's home a few months earlier.

Because the judge unfortunately did not conduct an evidentiary hearing on the motion to suppress, she did not have the benefit of the following information, all of which bears on the proper analysis of the constitutional interests at stake. I set it out here because the evidence was put before the judge at trial, when the defendant again moved for an evidentiary hearing, and he renewed his motion to suppress after the close of the Commonwealth's case, when it was again denied.

McDonough testified that she searched the defendant's minute-by-minute movements for the entire period he was monitored by the GPS system, namely from July 8, 2013, forward. "Each day was a 24-hour investigation on him to see where he was, until the time he came off the bracelet." See note 5, supra. She reviewed several months' worth of historical data to determine the defendant's location and movements at all times of day and night, and overlaid the data on a map. The data

revealed not only the defendant's location, but also his speed and direction.  The data tracked the defendant into buildings, including private residences.  The historical GPS data is stored (apparently indefinitely).  Employees of ELMO provide historical GPS data whenever law enforcement requests it without requiring anything more.

Discussion.  Under art. 14, the installation and use of a GPS tracking device is a seizure, and "the monitoring and use of data from GPS devices requires a warrant" supported by probable cause.  Commonwealth v. Connolly, 454 Mass. 808, 824 (2009).  See Grady v. North Carolina, 135 S. Ct. 1368, 1371 (2015) (GPS monitoring "plainly designed to obtain information" by physically intruding on subject's body" and is therefore Fourth Amendment "search").  Both the Supreme Judicial Court and the United States Supreme Court have held that the constitutional concern when a location-tracking device is physically attached to a person (or an object in which he has a possessory interest) stems from the protection of property interests, although members of both courts have grounded the constitutional concern in expectations of privacy instead.  See United States v. Jones, 565 U.S. 400, 405-412 (2012); Connolly, supra at 822-824.  Regardless of the root source of the concern, the pertinent inquiry is whether the government has committed a search by invading an individual's reasonable expectation of privacy

because "the Katz [v. United States, 389 U.S. 347 (1967)] reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test." Jones, supra at 409.

Although neither the concurrence nor the majority appears to dispute the point, it merits stating that under art. 14, a person has a reasonable expectation of privacy that he will "not . . . be subjected to extended GPS electronic surveillance by the government, targeted at his movements, without judicial oversight and a showing of probable cause."[6] Commonwealth v. Rousseau, 465 Mass. 372, 382 (2013). Even relatively short-term GPS monitoring implicates privacy concerns because it "generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." Jones, 565 U.S. at 415 (Sotomayor, J., concurring). "In the context of GPS monitoring, the expectation of privacy on which an individual justifiably relies is that his comings and goings will not be continuously and contemporaneously monitored except through physical surveillance, which requires a far greater investment of police resources and generates far less information than GPS

_____

[6] Similarly, under art. 14 there is no exception to the warrant requirement for historical registration cell site location information. Commonwealth v. Estabrook, 472 Mass. 852, 858 n.12 (2015).

monitoring."  Connolly, 454 Mass. at 835 (Gants, J., concurring).

The reasonableness of an individual's privacy expectation is directly tied to the length of time covered by the GPS data. See Commonwealth v. Estabrook, 472 Mass. 852, 859 (2015) ("[T]he salient consideration is the length of time for which a person's" locational data is requested).  When GPS "tracking takes place over extended periods of time[,] . . . the cumulative nature of the information collected implicates a privacy interest on the part of the individual who is the target of the tracking."  Commonwealth v. Augustine, 467 Mass. 230, 253 (2014), S.C., 472 Mass. 448 (2015).  On the other hand, there is "some period of time for which the Commonwealth may obtain a person's" historical locational data without a warrant "because the duration is too brief to implicate the person's reasonable privacy interest."  Id. at 254.  In the case of historical locational data, the Supreme Judicial Court has assumed that a six-hour period of data would not infringe upon a reasonable expectation of privacy such that a warrant would be required, whereas a two-week period clearly would.  See id. at 254-255 & n.37 (locational data from cell phones).  See also Rousseau, 465 Mass. at 383-384 (GPS data).  Accord Jones, 565 U.S. at 430 (Alito, J., concurring) (four-week period too long).  Wherever the line between longer-term and short-term might be drawn, we

are well beyond it in this case because at least two months' worth of the defendant's historical GPS data was requested and searched.

Under art. 14, the fact that an individual voluntarily carries (or, in this case, wears) an electronic device that transmits and/or collects detailed locational data does not mean that, as a matter of law, he no longer has a reasonable expectation of privacy in his whereabouts as reflected in that data.[7]  The application of this proposition can be seen in both Augustine, 467 Mass. 230, and Estabrook, 472 Mass. 852.  In both cases, the defendant voluntarily carried a cell phone that captured and transmitted his locational data, and in both cases the court nonetheless held that he retained a reasonable privacy interest in the data collected.  I find no support in our art. 14 case law for the proposition that, as a matter of law, a defendant's consent to wear a data-collecting device carries with it a necessary and total relinquishment of his reasonable expectation of privacy in the data the device collects or

---

[7] The fact that GPS data or monitoring is involved does not mean that we depart from the established principle that consent, and its scope, are questions of fact to be determined from all the facts and circumstances in which the consent is given.  See, e.g., Commonwealth v. Sanna, 424 Mass. 92, 97 (1997).  The Commonwealth bears the burden of proving consent, as it does for all exceptions to the prohibition on warrantless searches.

transmits.  I note that neither the majority nor the concurrence cites to any such case.

For these reasons, I conclude that the defendant's consent to wear a GPS device as a condition of pretrial release did not extinguish his expectation of privacy in the long-term historical GPS data, several months of which were searched for the purpose of criminal investigation, as occurred here.  See Commonwealth v. Augustine, 472 Mass. 448 (2015).  What is left, therefore, is to ask whether the defendant's consent to be subject to GPS monitoring as a condition of pretrial release reduces to any degree his reasonable expectation to be free from continuous government surveillance.  For the reasons that follow, I conclude that it does -- but only coextensive with a judge's authority to impose GPS monitoring as a reasonable pretrial condition within the purposes authorized by the Legislature.[8]  To conclude otherwise would render the GPS

---

[8] A judge has no inherent power to impose pretrial conditions of release because "[t]he power to impose pretrial conditions on release from custody is not essential to the function of the judiciary."  Commonwealth v. Dodge, 428 Mass. 860, 866 (1999).  As a result, the judge's authority to impose pretrial conditions on release derives from statute.  See id. at 864.  By contrast, a judge has the inherent authority to deny bail "where bail will not reasonably assure the defendant's appearance before the court" because "[t]he ability to secure a defendant's presence at trial is of fundamental importance to the basic functioning of the judiciary, without which justice cannot be properly administered."  Querubin v. Commonwealth, 440 Mass. 108, 114 (2003).

monitoring condition a punitive restraint on liberty, an outcome that has been rejected in the analogous situation of GPS monitoring as a condition of probation.[9]  See Commonwealth v. Cory, 454 Mass. 559, 568-573 (2009).

A person cannot effectively consent to an unconstitutional condition of pretrial release or to one that is outside the authority of the judge to impose.  The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."  Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586, 2594 (2013).  Thus, if on the facts presented, GPS monitoring would be an excessive condition of pretrial release under art. 26 of the Massachusetts Declaration of Rights or would violate art. 14, then "the State could not constitutionally require" the defendant to agree to it "and any consent given would be ineffective."  O'Connor v. Police Commr. of Boston, 408 Mass. 324, 329 (1990).  See Commonwealth v. LaFrance, 402 Mass. 789, 791 n.3 (1988); Commonwealth v. Moore, 473 Mass. 481, 487 n.6 (2016).  To conclude otherwise would mean that a defendant "keen" to be released pretrial would be impermissibly compelled "to accept a condition that would

_____

[9] If this is true for probationers, whose expectations of privacy are lower, then it certainly must be true for those released pretrial, such as the defendant.

unnecessarily and unreasonably limit his or her art. 14 privacy rights." Moore, supra. If this is true for parolees, as in Moore, then it is certainly true for the defendant here, who was only a pretrial releasee.

No statute authorizes a judge to impose, as a pretrial condition, GPS monitoring for general law enforcement purposes or for purposes of criminal investigation. See G. L. c. 276, §§ 42A, 58, 58A, & 87.[10] At the time of the defendant's arraignment, one statute permitted its imposition in cases of domestic violence where, in a judge's discretion, it was reasonable to "prevent [a defendant] from contact with the abused." G. L. c. 276, § 42A, inserted by St. 1978, c. 447, § 5.[11,12] See Commonwealth v. Pagan, 445 Mass. 315, 319-320

---

[10] Under G. L. c. 276, § 87, a judge has the authority to impose GPS monitoring on persons placed on pretrial probation. See Emilio E. v. Commonwealth, 453 Mass. 1024, 1025 (2009), citing Commonwealth v. Raposo, 453 Mass. 739, 748 n.10 (2009). It bears stressing that the defendant was not placed on pretrial probation.

[11] As of August of 2014, the Legislature has also permitted GPS monitoring to be imposed as a condition of pretrial release in domestic violence cases where necessary "to ensure the appearance of the person before the court and the safety of the alleged victim, any other individual or the community." G. L. c. 276, § 58, inserted by St. 2014, c. 260, § 32. This language was not in effect when the defendant was arraigned. Even if it had been, however, the outcome here would be no different because the search was not conducted for that purpose.

[12] Section 42A provides that, in cases of domestic violence under c. 209A, the terms and conditions of pretrial release "shall include reasonable restrictions on the travel,

(2005).  However, the judge did not impose GPS monitoring pursuant to that statute.  Instead, the defendant's pretrial conditions and bail were ordered under § 58, which specifies that "[t]he preferred pretrial disposition is release on personal recognizance," Mendonza v. Commonwealth, 423 Mass. 771, 774 (1996), unless, within the judge's discretion, the judge determines "that such a release will not reasonably assure the appearance of the person before the court."  G. L. c. 276, § 58, as appearing in St. 1995, c. 39, § 13.

Pretrial conditions must not be "excessive"[13] when compared with the "perceived evil" they are designed to address.  United States v. Salerno, 481 U.S. 739, 754 (1987).  Thus, a judge's authority to impose GPS monitoring is confined to the parameters

---

association or place of abode of the defendant as will prevent such person from contact with the abused."  G. L. c. 276, § 42A, inserted by St. 1978, c. 447, § 5.

[13] The Eighth Amendment to the United States Constitution, and art. 26, which is at least as protective, see Michaud v. Sheriff of Essex County, 390 Mass. 523, 533 (1983); Good v. Commissioner of Correction, 417 Mass. 329, 335 (1994); Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 657 n.3 (2013), "provide that a defendant has a constitutional right not to be subject to 'excessive' bail" or pretrial conditions.  Querubin v. Commonwealth, 440 Mass. 108, 112 n.4 (2003).  To determine whether a particular pretrial condition or set of conditions is "excessive, we must compare that response against the interest the Government seeks to protect by means of that response.  Thus, when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more."  United States v. Salerno, 481 U.S. 739, 754 (1987).

drawn by the Legislature and GPS monitoring cannot be imposed as a pretrial condition if excessive to the harm it was meant to address. See United States v. Polouizzi, 697 F. Supp.2d 381, 386-387 (E.D.N.Y. 2010) (mandatory GPS monitoring as condition of bail unconstitutionally excessive). The defendant's consent, in my view, is the other side of the coin. A defendant's consent cannot be construed to exceed a judge's statutory authority, but it can be construed to be coextensive with it. Thus, provided pretrial GPS monitoring is imposed for the purposes authorized by the Legislature, a defendant's consent to such monitoring operates to reduce his reasonable expectation of privacy in the GPS data collected to the extent they are searched for purposes authorized by the bail statutes, but no further.

We need not determine the exact parameters of that reduction here because the Commonwealth has not shown that the data were searched for any reason connected with the locational (i.e., stay-away) conditions of the defendant's pretrial release. Instead, the record undisputedly shows that the historical GPS data were searched for ordinary law enforcement purposes and investigation into other matters.

The majority places much weight on the fact that the defendant was ordered to stay away from Jones, and that she could be anywhere. Ante at      . This is true. But it

leads nowhere because the Commonwealth has not shown, or argued, that (1) the GPS data were searched for the purpose of determining whether the defendant violated this (or any other) condition of his pretrial release, or (2) Jones had any connection to the house in West Roxbury that was broken into, or for that matter, (3) she had any connection or relevance to the investigation by police in Norfolk County who initiated the search. Moreover, just because Jones might be anywhere, it does not follow -- either as a matter of logic or law -- that the defendant lost all expectation of privacy everywhere. The fact that one person might be anywhere does not mean that another loses his expectation of privacy everywhere.

The majority also rests upon the declaration that society as a whole would not recognize as reasonable the defendant's subjective belief that he retained a privacy interest in the long-term data collected by the GPS device. Ante at      . The majority does not disclose the basis for this assertion. In any event, empirical research does not support this view. Kugler and Strahilevitz, Actual Expectations of Privacy, Fourth Amendment Doctrine, and the Mosaic Theory, 2015 Sup. Ct. Rev. 205, 209-210 (2016).

I address briefly the Commonwealth's remaining arguments. First, the Commonwealth's argument that the defendant had no reasonable expectation of privacy in the GPS data because of his

status as one released pretrial is defeated by <u>Moore</u>, 473 Mass. at 485, where the Supreme Judicial Court held that even parolees (who have a lower expectation of privacy than those released pretrial) retain an expectation (albeit diminished) of privacy. The defendant's status is "salient," but not dispositive under art. 14. <u>Moore</u>, <u>supra</u>. Second, the Commonwealth's argument that the defendant had no reasonable expectation of privacy in the GPS data because it was in the hands of a third party has been rejected in <u>Augustine</u>, 467 Mass. at 245. In addition, the GPS data was not in the hands of a third party. Rather, it was in the hands of, and searched by, an employee of ELMO, a unit of the probation department, and the entity with which the defendant entered into the GPS equipment agreement. Third, to the extent the Commonwealth is arguing that the search was permissible under the special needs exception to the warrant requirement, I note that the special needs doctrine applies only when special needs "beyond the normal need for law enforcement" outweigh "the individual's privacy expectations" and make it "impractical to require a warrant or some level of individualized suspicion in the particular context." <u>O'Connor</u>, 408 Mass. at 327, quoting from <u>National Treasury Employees Union</u> v. <u>Von Raab</u>, 489 U.S. 656, 665 (1989). There is nothing to indicate that the search of the defendant's historical GPS data was conducted to further any program or need other than ordinary

criminal law enforcement, and so the doctrine does not apply on this record.  Finally, drawing an analogy to the six-hour warrant exception for cell site location information, Augustine, 467 Mass. at 255 n.37, the Commonwealth argues that no warrant was required.  This argument is defeated by the record.[14]

For these reasons, I am of the view that the defendant's motion to suppress should not have been denied without an evidentiary hearing.  Accordingly, I would vacate the judgments and remand to determine "whether, in the particular circumstances of this case, the Commonwealth is able to meet th[e] warrant requirement through a demonstration of probable cause."  Commonwealth v. Augustine, 472 Mass. at 448.  See Augustine, 467 Mass. at 255 (probable cause required to search historical cell site locational information).

---

[14] It was the Commonwealth's, not the defendant's, burden to establish that the scope of the warrantless search did not exceed the six-hour limit of Augustine, supra.